### DESDEMONA CHERITREE vs. AARON ROGGEN.

In an action for libel, private letters, written to the plaintiff by the defendant, tending to show that the libel was published with hypocritical and vicious motives, are admissible to show malice. Malice can be shown by circumstances connected with facts.

In an action for publishing a libel which the defendant claimed had been sent to him, anonymously, through the post office, by some other person, with a request that he would send the same to the plaintiff, secretly, the defendant offered to prove, by a witness who was not an expert, that the address upon the envelope containing the libel was not in the handwriting of the defendant. *Held*, that this testimony was properly rejected; the best·evidence, upon that subject, being the testimony of the defendant himself.

A witness cannot swear to general character, unless he knows it. This knowledge is a thing acquired by time, and by the general speech of the people who know, and who have the opportunity of knowing, and of forming an opinion from that knowledge.

THIS is an appeal from a judgment rendered at the Greene county circuit, and from an order denying a motion for a new trial.

The action was for libel, which consisted in sending two letters to one Mrs. Hurd, a sister of the plaintiff, containing indecent and unwarranted aspersions upon the plaintiff's conduct, and calculated to ruin her character. The first of these letters purports to be written at Oak Hill, August 23, 1867, and the last at Oak Hill, September 10, 1867. They were deposited in the post office at Oak Hill, and post-marked at or about the time they purport to bear date, inclosed in an envelope directed to Mrs. Hurd, at Oak Hill, who received them within a day or two thereafter.

The action was tried at a circuit court in Greene county, before a jury, who rendered a verdict in favor of the plaintiff for $500. All the necessary and material facts are sufficiently stated in the opinion.

*Olney & King*, for the plaintiff.

*Givens & Osborn*, for the defendant.

Cheritree *v.* Roggen.

*By the Court,* P. POTTER, J.   So much of the motion, at Speeial Term, for a new trial, as was based upon the grounds of surprise and of newly discovered evidence was correctly disposed of by the judge.   The opposing affidavits were contradictory to such an extent that the weight of evidence demanded the decision that was made, by the order appealed from.   The other grounds of the motion are legitimately included in the appeal from the judgment upon the case made and settled for that purpose.

The action is for a libel.   The language of the letters is clearly libellous; they had publication by the sending them to Mrs. Hurd, the sister of the plaintiff.   And it is not controverted, now, that the defendant gave them circulation by sending them to Mrs. Hurd through the post office, so that the responsibility was thrown upon the defendant to defend, either by a justification, which he did not attempt, or to mitigate the damages by evidence of want of malice, or of acting with good intentions towards the plaintiff in the publication of the libels.

The defendant attempted to mitigate the damages, first, by showing that there existed nothing but kindness and good feeling between himself and the plaintiff; that there was a relationship between them, the plaintiff being the widow of the brother of the defendant's wife; that the parties were both members of the same church, the Episcopal, and the defendant an officer (warden) of the church.   He further attempted to show that the two libellous notes were sent to him through the post office anonymously, with a request that he would send them to Mrs. Hurd, secretly; that he so sent them as requested, without knowing the contents.

Whether the defendant made out these defences or not, he was technically responsible for the publication of the libels; he put them in circulation to the prejudice of the plaintiff; he inflicted the injury, and was bound

to atone for it; severely if done with evil intent, with less severity if done innocently. The intent was a question for the jury. The opinion formed by the jury is made manifest by their verdict. There is evidence in the case, which, if believed by them, fully justified the verdict they rendered. The defendant insists the verdict is against the weight of evidence; in this, doubtless, he means in its amount.

The plaintiff's counsel, on the trial, attempted to prove an evil motive on the part of the defendant, by showing that he attempted to prevent the plaintiff's removal from her residence in Greene county to Syracuse; and that he had sought, on various occasions, to have private meetings himself with her, and promising her favors and presents if she would so meet him and consent to his wishes, from which it was attempted to deduce a reason for his desiring her to remain near him. This evidence and its deductions would only be legitimate upon the theory that the defendant himself wrote the libellous letters.

Upon the question of fact, whether the defendant himself wrote the letters in question, there was much evidence, and such a conflict of evidence as to carry the point beyond the duty of the court, to reverse a finding of a jury. Ten witnesses swore to the belief that the letters were in the defendant's handwriting. And while an equal number of witnesses were of a contrary opinion, it still presents a case in which no precedent could be found to authorize a court to reverse a finding of a jury as being against the weight of evidence, or if even against the weight, not against such a preponderance of weight as makes it the duty of a court of review to interfere; and yet it must be conceded that, taking the defendant's side of the case alone, or perhaps looking at it with the eye of his counsel fully imbued with the good faith of his client, and weighing testimony with all the

Cheritree *v.* Roggen.

sympathy begotten by that faith, it appears strange that a jury should have been so impressed.

The reviewing court looks upon the case divested of such sympathies, and is bound to follow well settled rules, established to control its action.

Our further duty in this case is to examine the rulings of the judge on the trial, and the exceptions thereto, and his charge to the jury and refusals to charge, and the exceptions taken, to see if any errors have been committed therein. The first objections raised on the argument, to the rulings of the judge, are his admissions of evidence given by the plaintiff, to prove propositions made by the defendant to the plaintiff by letter to meet him privately at designated places, and promising that she and her children should never want, &c.; to go with him to Clarksville, and to stay with him there while he was hunting, he proposing to pay her board; in his attempts also to dissuade her from going to Syracuse, &c. These letters had been destroyed, as the plaintiff testified, at the defendant's request. The counsel for the defendant objected to the contents of these letters, severally, as immaterial, irrelevant and incompetent; the objections were overruled, and the defendant excepted, and the motions to strike out the evidence of the contents of these letters severally were denied.

The contents of these letters could be proved by parol, after their destruction, if the contents were either material, relevant or competent. It appears to me that, taken altogether, these letters did contain relevant evidence. The matter charged as libellous had for its object, clearly, one of two things, either a motive to protect her character from a suspicion or charge of unchastity, or to prevent her departure from her then residence, and perhaps the latter motive, to prevent the former, but in both are found the distinct charge of unchaste conduct. At the time this evidence was offered, it had been proved that the defendant was

certainly the publisher, and there was evidence of his being the writer of the libels. It would clearly be evidence of aggravation and malice, if it was shown that the defendant, in his private letters to her, had manifested no such high regard for her chastity, as the libels would seem to be the evidence of; or in other words, the libels were published with hypocritical and vicious motives. Malice can be shown by circumstances connected with facts.

The next objection is to the ruling of the judge upon the testimony of George C. Lee, a witness for the defendant. The counsel proposed to prove by this witness whether the envelopes, in which the libels came to the defendant, and the direction to the defendant inside of such envelopes, and the libellous letters, were all in the same handwriting. The objection was to the proof of the handwriting upon the envelopes directed to the defendant. The judge rejected the evidence, but not, as he stated, on the ground that the witness was not an expert. The objection to the testimony was sustained, and the defendant excepted. I think this ruling was right, by the law of evidence. If this proof would have helped the defendant's case, it would have a corresponding influence to injure that of the plaintiff. This was a kind of proof that the defendant himself could make, or equally well cause to be made by another for his own advantage; he would thus possess the advantage of manufacturing the evidence that would acquit him. The proof, therefore, that it was not the defendant's handwriting, by an expert, or person other than the defendant, ought not to be allowed. The best evidence would be the defendant himself, who might testify that he neither wrote it, *nor caused it to be written;* for if he did the latter, while he would be equally liable for the act, he might have the benefit of the evidence offered, and he, who only perhaps could inform whose handwriting it was, might omit to be

sworn himself and secondary evidence be admitted. As the case then stood, I think the ruling was right. It would not at all follow that because the envelope was in the same or a different handwriting, the libel was not his. Upon the plaintiff's theory of the case, as it then stood proved, the defendant had concocted the libels, and had them placed in the post office, directed to himself, and had received them from the post office in the envelopes he had prepared. It was this theory which he was called upon to defend and disprove ; it did not help to disprove it that the envelope was in any particular handwriting, nor that it was in the same handwriting as the libels.

The next, and only further objection to the ruling of the judge complained of, is that upon the questions put to a witness called to impeach Frank Graham, a a witness for the plaintiff, as follows : Q. "Do you know this boy, Frank Graham ?" A. "I know him by sight." Q. "Have you heard him talked about by the community ?" A. "I did a year ago last summer." Q. "Have you heard people speak of his general character ?" A. "I did then." Q. "From what people said of him, what is his general character, good or bad ?" Court. "How long have you known him ?" A. "I knew him then, I never saw him before or since until this court." Court. "How long before this trial ?" A. "This was in 1867, in the month of June, a year ago last summer." Court. "Did you learn his general character ?" A. "I don't know that I did." Court. "Was it at the place where you lived that you heard these people talk ?" A. "No sir, that was at Oak Hill." Court. "How far is it from where you reside ?" A. "Three miles and a half." Court. "I don't think that is general character at all. The transactions that arise and surround a particular case don't make general character." To which ruling and decision the defendant's counsel excepted. Counsel for defen-

Cheritree *v.* Roggen.

dant. "I propose to show that on a given day in 1867 numerous persons residing at Oak Hill stated in witness' hearing that Frank Graham's general character was bad." Court. "I don't think that it will do." And the court excluded the evidence so offered, and the defendant's counsel excepted.

It is a very simple proposition, and sound as it is simple, that a witness cannot swear to general character, unless he knows it. This knowledge is a thing acquired by time, and by the general speech of the people who know, and who have the opportunity of knowing and of forming an opinion from that knowledge. The witness neither knew the person attempted to be impeached, or his general character, nor was there any evidence that the person so speaking knew. If the fact that a few or a number of persons, on a single occasion, speak ill of another, in the absence of evidence that the persons so speaking knew the person they were speaking of, were sufficient to establish character, few persons could be found to pass that ordeal unharmed in reputation. The ruling of the judge was right.

There were no exceptions to the charge of the judge. On a full examination of the case I do not find any error that requires a reversal. The judgment should be affirmed, and also the order appealed from.

Judgment and order affirmed.

[THIRD DEPARTMENT, GENERAL TERM at Binghamton, December 2, 1873. *Miller, Potter* and *Parker,* Justices.]