# Holmes *v.* The State.

*Indictment for Murder.*

1. *Proof of character; cross-examination of witness.*—A witness who has testified, on his direct examination, that he had never heard anything against the defendant, may be asked, on cross-examination, if he had not heard that defendant "wore stripes" while working on the streets.

2. *Same.*—A witness may testify that he never heard anything said against the defendant's character, when well acquainted with his reputation in the neighborhood in which he lives; but not when he only expresses his own opinion, based on what he knew from a personal acquaintance for two years, during which time he had seen defendant frequently, but did not know where he lived, and their relations were not intimate.

3. *Homicide of person interfering to prevent difficulty between others.* A homicide perpetrated in the heat of passion, produced by sudden provocation sufficient to stir resentment to extreme violence in the mind of a just and reasonable man, may be only manslaughter; but this principle does not apply to the homicide of a person who only interfered, catching hold of the defendant, to prevent him from attempting to shoot another person, with whom he had been quarrelling.

4. *Same; homicide by accident, of misadventure.*—If the defendant, having a pistol in his hand, was returning to the store of the deceased for the purpose of killing, if it became necessary, another person with whom he had been quarrelling, and was intercepted by the deceased, who endeavored to prevent any difficulty, and in the scuffle which ensued between him and the defendant was killed by an accidental discharge of the pistol in the hands of the defendant; although the killing was by misadventure, yet the defendant would not be guiltless, since he was engaged in an unlawful act.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case, George Holmes, a freedman, was indicted for the murder of Thomas Robinson, by shooting him with a pistol; was convicted of murder in the first degree, and sentenced to the penitentiary for life. The killing occurred on Christmas morning, 1888, in the city of Montgomery, in the street in front of the bar-room of the deceased. He had prepared a bowl of egg-nog "as a treat to his customers." The defendant and one King Woods, another freedman, were in the crowd, and, after drinking, began to quarrel and abuse each other. Some one caught hold of the defendant, and led him away some distance, telling him to "go home and have no fuss, as he was pretty

full;" but in a few minutes he came running back up the street, holding a pistol in his hand. The deceased came out of the house, and said to him, "Go away, George, I don't want any fuss on my premises," at the same time catching him by the arm or shoulder; and in the struggle which ensued between them the pistol was discharged, the ball entering the abdomen of the deceased, and killing him. A bystander took the pistol from the defendant, who at first denied that he had fired the shot; but, after sitting on a bench at the door for a few minutes, he got up and ran off.

On the trial, as the bill of exceptions states, Ed. Farley, a witness for the defendant, was allowed by the court, "after inquiring the time and terms of his acquaintance with the defendant," to state that he had "never heard anything against him." The State then asked the witness, "Did you never hear that he had worn stripes while working on the streets of Montgomery?" and he answered: "I have heard that he wore stripes, but do not know that it is true." The defendant objected to this question and answer each, and excepted to the overruling of his objections. One McHugh, another witness for the defendant, in answer to the question whether he knew the defendant's "character for peace and quiet in the neighborhood where he lived prior to his arrest," said: "I think it is good. I have known him for about two years, and during that time I saw him every two or three days; and I have never heard anything said against him." On cross-examination, the witness further said, "that he formed his opinion of the defendant's character from his own personal knowledge of him, based on what he himself knew; that he had no intimate acquaintance with the defendant, and did not know where he lived." The court, on motion of the solicitor, then excluded the testimony of the witness as to the defendant's character; and the defendant excepted.

The court charged the jury, at the instance of the State, as follows: "The passion and excitement of the defendant produced by Robinson's interference between him and King Woods would not be sufficient to reduce the homicide from murder in the first degree to murder in the second degree, if the defendant, at the time he shot Robinson, had formed the design to take his life; that this design might be formed but an instant before the killing, and a killing under such circumstances would be murder in the first degree."

The defendant excepted to this charge, and requested the

following charges in writing, duly excepting to their refusal:

(1.) "If the jury find that the defendant was returning to Robinson's store, and had the intent to shoot King Woods in the event it became necessary; and that Robinson interfered to prevent defendant from proceeding further in this intent, and in this interference tried to take the pistol away from him, and, in doing this, placed his hands rudely upon the defendant; and if they find that this interference aroused the defendant's resentment, and that in the heat of this resentment, before cooling time, and without previously formed design, he shot Robinson; then they can not find him guilty of murder in either the first or the second degree."

(2.) "Even if the jury believe from the evidence that the defendant intentionally shot Robinson, yet, if they believe that he did so from passion suddenly aroused by Robinson's interference to prevent a difficulty between him and King Woods, and that his act sprung entirely from passion thus aroused, they can not find him guilty of murder in either the first or the second degree."

(3.) "If the jury believe from the evidence that Robinson met the defendant upon the public road, and obstructed his further progress by laying hands upon him, and by placing his body in front of defendant, and repeated this several times, shifting his position as the defendant shifted his; and if they further believe that these acts of Robinson aroused the passion of defendant, and that in the heat of passion so aroused he shot Robinson; then they can not find him guilty of murder in either the first or the second degree."

(4.) "If the jury find that, at the time the fatal shot was fired, the defendant was returning to Robinson's store with the intention of shooting King Woods in the event it became necessary, and that this fatal shot was caused by an accidental discharge during a scuffle with Robinson,—then they must find the defendant not guilty."

(5.) "The main question to be decided is, whether the shooting was accidental. There is no evidence tending to show that the defendant, at the time the pistol fired, was in the act of shooting at King Woods. Then, the question to be determined is, whether the defendant shot at Robinson with a formed design to take life; and in determining this, the jury must look carefully at all the facts and circumstances surrounding the case—at the facts, if found to be facts, that the ball entered the body of the deceased just

[Holmes v. The State.]

under the ribs, and a little to the left of the center of the body in front, and, without being deflected from its natural course, lodged just beneath the shoulder-blade; that the defendant was at the time perfectly friendly with the deceased; that the defendant was watching King Woods at the time of the firing, having seen him with a pistol during a difficulty between them a few minutes previously; that the defendant said, immediately after the firing, that he did not do it, and remained at the scene of the shooting some time after the shot, protesting his innocence—taken in connection with all the other testimony in the case."

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—1. It was clearly competent to ask the witness Farley, on cross-examination, if he had not heard that the defendant "wore stripes" while working on the streets of Montgomery; the witness having testified, on his examination in chief, that he had never heard anything against the defendant. To say of one that he "wore stripes," the appellation commonly applied to the garb of a convict, necessarily implies a conviction of some infraction of the law, and is therefore derogatory to the person so referred to. In this instance, the testimony tended directly to contradict and weaken the negative evidence of good character given by the witness, and its admission was free from error.

2. The witness McHugh was incompetent to testify, either affirmatively or negatively, as to character. He knew nothing of the reputation borne by the prisoner in the neighborhood in which he lived, or where he was known; and he failed to show that he was in such a position with reference to the defendant's residence, or circle of acquaintances, as that the fact of his not hearing any thing against him would have any tendency to show that nothing had been said, and that therefore his character was good. This witness swore, that "he thought the character of prisoner for peace and quiet was good;" but he further testified, that this was his personal opinion merely, based on what he himself knew from a personal acquaintance which had existed for about two years, during which time he had seen him frequently, "but their relations were not intimate, and he did not know where the defendant lived." Very clearly this witness neither knew the reputation of the defendant affirmatively, nor was he in a position to have heard what was said

[Holmes v. The State.]

in derogation of good character, in such sort that his having heard nothing against the defendant could have shed any light on the inquiry. His evidence was properly excluded. *Cheritree v. Roggen*, 67 Barb. 124; *Dave v. State*, 22 Ala. 23; *Mose v. The State*, 36 Ala. 211; *Martin v. Martin*, 25 Ala. 201; *Sorrelle v. Craig*, 9 Ala. 334; *Hadjo v. Gooden*, 13 Ala. 718.

3. It appeared on the trial that the defendant, while seeking a dfficulty with one King Woods, and endeavoring to get to him, was intercepted by the deceased, solely for the purpose of preventing a consummation of defendant's design against Woods, and that in the scuffle incident to this interference the fatal shot was fired. The charge given at the instance of the State, and the first, second and third charges asked by the defendant and refused, related to the passion assumed to have been aroused by the interference, and the sufficiency of passion thus excited to reduce the homicide below the grade of murder. The principle laid down in *Field's Case*, 52 Ala. 348, and elaborated in the later cases of *Judge v. State*, 58 Ala. 406, and *Mitchell v. The State*, 60 Ala. 26, that " an affray may occur, or sudden provocation be given which, if acted on in the heat of passion produced thereby, might mitigate homicide to manslaughter; yet, if the provocation, though sudden, be not of that character which would, in the mind of a just and reasonable man, stir resentment to violence endangering life, the killing would be murder," applies here. The provocation shown by the evidence, and hypothesized in the charges referred to, was not sufficient to arouse passion, the existence of which would have reduced the homicide to manslaughter; and hence the action of the court, as well in giving the charge requested by the State, as in refusing those referred to above asked by the defendant, was free from error.

4. On the facts supposed in the defendant's 4th charge, he could not have been guiltless. If, as there hypothesized, he was returning to Robinson's store for the purpose of killing Woods, if it became necessary, thus endeavoring to put himself under a necessity, which it was his duty and within his power to avoid, he was engaged in an unlawful act; and if the deceased interfered to arrest this unlawful act, and in the scuffle incident to that interference, he was accidentally shot by the defendant and killed, manifestly this killing, while, abstractly considered, it was a misadventure,

[Duncan v. The State.]

yet, when referred to the intent of the defendant towards Woods, and treated as a resultant of an effort to thwart that intent, was a crime; and on this ground the refusal of this charge may be justified. The charge was bad, moreover, because it was involved and argumentative, and naturally tended to mislead and confuse the jury.

The 5th charge requested by the defendant is unsupported in several of the facts upon which it proceeds, and was properly refused on this ground.—*Jordan v. The State,* 81 Ala. 20.

The judgment of the City Court is affirmed.