# Smith v. The State.

*Indictment for Perjury.*

1. *Jurisdiction of city court; limitation thereof.*—Where the act establishing a city court confers upon it jurisdiction of causes of action arising within certain designated limits, the jurisdiction of such court is not limited to only such causes of action as arise within the prescribed limits; and where a cause of action against a railroad company for personal injuries arose outside of the territorial jurisdiction of such city court, but the railroad ran through, and the company did business within, the designated limits of its jurisdiction, the said court has jurisdiction of such cause of action.

2. *Evidence; when original pleadings, &c. in a suit are admissible.*— On a trial under an indictment for perjury, when it is shown that the final record of the case in which it is alleged the perjury was committed had not been made up, the original pleadings, rulings and judgment of the court in said case are admissible in evidence.

3. *Same; subpœna docket admissible.*—On a trial under an indictment for perjury, where the clerk of the court testifies that the defendant was subpœnaed as a witness in the case in which the perjury is alleged to have been committed, answered to his name, was sworn and examined as a witness, and that the names of the witnesses in the subpœna docket were checked off as the witnesses answered to their names, the subpœna docket in such case, with a check mark opposite the name of the defendant, is admissible in evidence, as tending to show that the defendant was summoned, attended and was sworn as a witness in said case.

4. *Evidence of character; witness may be cross-examined as to defendant's being accused of certain particular offenses.*—A witness who has testified to the good character of the defendant, may be asked, on cross-examination, whether or not he ever heard of defendant being accused of certain specific offenses before the commencement of the then pending prosecution; such question being competent for the pur-

pose of testing the credibility of the witness, and not as affecting the character of defendant.

5. *Indictment for perjury; sufficiency.*—An indictment for perjury in a civil case is sufficient under the statute, (Code, § 3908), when it substantially follows the form given in the Code (Cr. Code, p. 275, form 67), and alleges the substance of the proceeding in which the alleged false testimony was given, the name of the officer before whom the oath was taken, his authority to administer it, the facts testified to, the materiality of the testimony, and that it was willfully and corruptly false.

6. *Perjury; proof of one of several assignments of perjury sufficient to justify conviction.*—Where an indictment for perjury contains several distinct assignments of perjury, proof of any one of the material assignments will authorize a conviction, although as to the other assignments, the State may have failed in its proof.

7 *Charges to jury when properly refused.*—Charges to the jury that invade the province of the jury, and such as are argumentative or misleading, are properly refused.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAS. W. LAPSLEY.

The appellant was indicted, tried and convicted under the following indictment: "The grand jury of said county charge that before the finding of this indictment that Sam Smith, on the trial of a civil action in the city court of Anniston, for damages for personal injury to John Smith, while said John Smith was an alleged passenger on one of the trains of the Richmond and Danville Railroad Company, leaving Anniston for Birmingham on June 17, 1891, in which John Smith was plaintiff, and the Richmond and Danville Railroad Company, a corporation under the laws of the State of Virginia, defendant, being duly sworn by the clerk of said court, who had authority to administer such oath, falsely swore that he, Sam Smith, saw John Smith buy a ticket at Anniston for Birmingham on said train; that he, said Sam Smith, got on said train at Anniston, and sat in the same car with John Smith, and a little in front of him; that after leaving Irondale, the conductor went to said John Smith and demanded his fare to Birmingham; that said John Smith told him, the conductor, that he had paid his fare to Birmingham; that the conductor commenced abusing him, said John Smith, grabbed him by the left arm, pushed him to the rear door of the car; cursed the said John Smith, and pushed him off the car while it was in motion; the matters so sworn to being

material, and the oath of said Sam Smith in relation to such matters being willfully and corruptly false, against the peace and dignity of the State of Alabama."

The defendant demurred to this indictment, on the grounds: 1st. That the substance of the proceedings or pleadings in the suit in which defendant is charged with having taken a false oath is not set out in the indictment. 2d. That the indictment fails to show that the cause of action in which the defendant is charged with taking a false oath arose within the jurisdiction of the city court of Anniston. 3d. The said indictment fails to aver sufficiently what part or parts of the defendant's testimony was false. 4th. It fails to show sufficiently for what crime the defendant was indicted. This demurrer was overruled, and the defendant duly excepted.

The defendant pleaded not guilty, and by special plea that the cause of action in which the defendant is averred to have sworn falsely was not within the jurisdiction of the city court of Anniston. On motion of the State this special plea was stricken from the file, as frivolous and as being no answer to the indictment; and to this ruling the defendant duly excepted.

Upon the trial of the case the State introduced evidence tending to show that on the trial of the cause of action in the city court of Anniston, in which one John Smith was the plaintiff, and the Richmond & Danville Railroad Co. was defendant, brought for the recovery of damages for personal injuries sustained by the said John Smith by being ejected from the train of the defendant railroad company, the defendant in the present case swore, among other things, that he saw the said John Smith buy a ticket at Anniston for Birmingham over said road; that said John Smith was a passenger on said train, and after having given his ticket to the conductor, was ejected by the conductor from the train before reaching Birmingham; and that this testimony was false.

Upon the examination of A. H. Shepperd, the clerk of the city court of Anniston, he testified that he was present at the trial of the cause of John Smith against the Richmond & Danville Railroad Company, and that the defendant in the present case was subpœnæd as a witness in the case of John Smith v. R. & D. R. R. Co., and answered to his name, and was sworn and examined

as a witness therein. At the request of the solicitor, the said clerk produced the subpœna docket in the case of John Smith v. R. & D. R. R. Co., and in connection therewith offered to introduce the checks thereon, which showed that the name of the defendant in this case was checked off, the clerk testifying that the said names had been checked off as the witnesses answered to their names. The defendant objected to the introduction of this docket, and the entries thereon, because they were immaterial and irrelevant, and incompetent evidence. The court overruled the objection, and the defendant duly excepted. Wait, a witness for the State, testified that he saw and heard the defendant testify on the trial of the case against the railroad company.

The testimony for the defendant tended to show that the facts testified to by him on the trial of the case of John Smith v. R. & D. R. R. Co. were true. One Donovan was introduced as a witness for the defendant, and, after testifying that he knew the general reputation of the defendant in the community in which he lived, stated that his reputation was good; that "he had never heard anything against him until this matter came up." On cross-examination the counsel for the State asked the witness this question: "Have you not heard it said, before this indictment was found, and after the case of John Smith v. R. & D. R. R. Co. was tried in this court, in which John Smith claimed damages for injuries, that the defendant and others had conspired together to recover damages by false swearing as to how he was ejected from the train?" The defendant objected to this question, on the ground that it was irrelevant, incompetent and illegal, "and because the question calls for evidence of a rumor arising from and growing out of the same matters and transactions, about which the defendant is charged with false swearing." The court overruled this objection, and allowed the question, "on the ground that the witness had said in his direct examination that he had heard nothing against the defendant before the indictment was found." To this ruling the defendant duly excepted. To the question asked, the witness answered that he had heard that the defendant and others, in the suit referred to, had "sworn to things which they did not see." The defendant moved to exclude the answer of the witness on the same ground he ob-

jected to the question, and duly excepted to the court's overruling his motion.

Upon the introduction of all the evidence, the court, *ex mero motu*, instructed the jury in writing as follows: "Gentlemen of the jury: A grand jury of your county charges Sam Smith with the crime of perjury, as is set forth and stated in the indictment, which has been read before you. In order to convict him the State must, by the evidence, establish all the material allegations of the indictment, and if you have any reasonable doubt as to any of those material allegations you must acquit the defendant. 1st. The evidence must satisfy you that the defendant, Sam Smith, was duly sworn to testify in a cause in this court entitled John Smith against the Richmond & Danville Railroad Company. Unless he was put under the sanction of an oath, and unless it was administered by the officer named in the indictment, and was in the cause named, you must acquit. But if he was duly sworn to testify in the cause named, then enquire further whether or not he testified substantially as alleged in the indictment. Consider fully and carefully what the evidence now before us shows as to his testimony in the former case, and see whether or not the material allegations of the indictment as to his testimony are proven to have been sworn to by him on the trial. (Did he in the other case testify substantially as the grand jury say that he did. It is not essential that every part of his testimony as narrated in the indictment should be proven. For instance, the indictment says that defendant swore that John Smith went out of the back door of the car. If this is a mistake in the indictment, the mistake should not prevent conviction, if the material and substantial allegations are proven, as I will advise you hereafter.) But the State must show you by satisfactory proof that the defendant did give evidence substantially as alleged in the indictment, otherwise you can not convict. (Then carefully consider and compare all the evidence and say whether the defendant's evidence complained of in the indictment was false or true. If you find different witnesses contradicting each other, then as reasonable, intelligent men, weigh the testimony of the State going to show the falsity of the defendant's statements against the evidence showing its truth, and try and determine which

you must believe.)   I can not instruct you which wit-
ness or which set of witnesses to believe.   The respon-
sibility rests on you.   I may assist you, however, by
some general rules, which our experience shows us to be
valuable in such cases.   For instance, take the State's
witnesses, and their testimony. How was it given before
you?   What interest or prejudice are they shown to
have in the case?   What amount of intelligence, capac-
ity or memory do they show to have?   Is their testi-
mony reasonable or unreasonable?   Was it given in with
the apparent desire to tell the truth, or was their evi-
dence given in with an apparent desire to convict the
defendant?   Was their sworn testimony as they gave it
inconsistent, or was it contradictory?   Compare the
whole testimony of State's witnesses, and see if they cor-
roborate each other or contradict each other.   If you
find that they corroborate each other literally and min-
utely, consider whether or not this minute corroboration
may not show preconcert and arrangement with a pur-
pose to convict.   If, on the contrary, there is a substan-
tial agreement and corroboration between the State's
witnesses, together with some variety and seeming con-
flict as to non-essential or immaterial matters, you should
note that agreement and corroboration as important to
enable you to determine the naturalness and truthful-
ness of their statements, for experience shows us that
witnesses seeing the same occurrence, and detailing the
same, are apt to honestly differ in some of the details,
and differences as to details are frequently found to be
consistent with substantial agreement as to the essential
and material facts.   Now use these same rules in weigh-
ing the testimony offered you by the defendant, and in
considering the value of the testimony of the defendant's
witnesses.   How did they testify—positively, intelli-
gently, fairly, and impartially, or otherwise?   Do they
corroborate each other in substantial and material points,
or do they contradict each other?   If they agree in the
substantial parts of their testimony, it should go to es-
tablish the correctness of their evidence.   But if they
contradict each other in matters as to which you believe
they can not be mistaken, you should consider that fact
in estimating the reliability and correctness of what they
depose to.   Taking all the evidence that has been offered
to you on both sides try and arrive at the truth of the

issues here.   Was the evidence of Sam Smith as charged
in the indictment substantially true, or was it substan-
tially false?   If satisfied that it was true, you must ac-
quit.   Or if on considering all the evidence you are not
satisfied beyond a reasonable doubt that defendant swore
falsely, you must acquit.   If you are satisfied he swore
falsely, go a step farther.   Was that false testimony ma-
terial in the case of John Smith vs. R. & D. R. R. Co.?
From an inspection of this record I tell you that it was
material to show that John Smith did or did not buy a
ticket to Birmingham, and was or was not ejected from
the car as alleged in his complaint, and if defendant tes-
tified as to these matters that John Smith did or did not
buy a ticket, or was or was not ejected, the testimony
was material in that cause.   And if the defendant swore
falsely as to either of those matters, it is not essential to
prove that he testified falsely as to other parts of his
alleged testimony.

   ''Go also a step farther.   The testimony complained of
must not only have been false and material to the issue,
but it must have been willfully and corruptly false.   It
was willfully false if the defendant was not present on
the cars, and knew nothing of what he was testifying
about, yet testified that he was present, and testified to
occurrences on the car ; or if being on the car and know-
ing what actually occurred, he knowingly and intention-
ally testified to what was untrue.   You should ask your-
selves : was the testimony false, and did Sam Smith
know it was false?   Again, the law says, it must have
been corruptly false.   If a man, in order to help a friend,
or harm an enemy, testifies falsely for the purpose of
misleading a court or jury, you may well believe and
find that his purpose was a corrupt one.   If, however,
the false testimony is given in by mistake or by inad-
vertence, and with no purpose of wrongly influencing a
court or jury, you can not convict.   (If, however, the
State has convinced you that in the matters set forth in
the indictment, this defendant, being duly sworn in the
cause as stated in the indictment, testified willfully and
corruptly false as to things material in the cause, as al-
leged in the indictment, then your verdict should be,
'We the jury find the defendant guilty as charged in the
indictment.')   If the State has not so convinced you,
you should say, 'We the jury find the defendant not

guilty.' This cause is important in view of the fact that the charge is of the gravest character, affecting the liberty of this defendant, whom the State does not want to have punished unless he is guilty. It is of the gravest importance also, because if guilty, this defendant has shown contempt for the solemn sanction of his oath before the Almighty to tell the truth, the whole truth, and nothing but the truth. He has, if guilty, come into a court and shown defiance and contempt for the great State and for this tribunal which has been established to do equal justice between us all. If he is guilty, and you by mistake turn him loose, you encourage him and others, who may be like him, to defy and contemn the law of the land. If by mistake you turn loose a guilty perjurer in this case what security have we against other bad men, who may seek to use the machinery of this or other courts to advance their base and wicked designs? If, on the other hand, you, by prejudice or mistake, convict an innocent man, you do him a wrong and injury which is irreparable, and most grievous, and make this court an engine for wickedness and oppression.

''(Hence I solemnly charge you to carefully weigh the evidence one against the other, and see which side is telling the truth.) First, see if you can reconcile it all. If you can not reconcile it all, and are forced to conclude that some are lying, try and find out who they are. The prosecution says that defendant and his friends, who have testified for him, conspired together to rob the railroad company, by means of the suit of John Smith against the company, and made up their stories carefully so as to have them agree as to a few main points, whereas on other matters, concerning which they could have had no chance to foresee and agree about, they differ. It is for you to say if this is so or not. The defendant, by his counsel, tells us that this is a case of persecution, the strong cruelly and wickedly oppressing the poor and weak; and that the State witnesses are uncertain, unreasonable and contradictory, and hence unworthy of belief. We sit here, gentlemen, to guard as well as we can against any such iniquity as is charged against the prosecution. If the evidence shows you that such is being attempted, and in fact, unless you are thoroughly convinced that it is not so, you must acquit the defendant. But do not jump to that conclusion simply because

[Smith v. The State.]

the defendant is poor and ignorant, and a great corpora-
tion is assisting in the prosecution. The poor widow
has a right to cry out to the judge and jury, 'Avenge me
of mine adversary.' But she has not a monopoly of that
right. All in the land, high and low alike, have a right
to appeal to the court of the country, and get redress for
their injuries. And if a man has injured you, and while
doing so violates the criminal law, you have a right to
go before the grand jury and make your complaint, and
you have a right to assist, and you are to be commended
for assisting, the officer of the law in bringing a guilty
man to justice. For in convicting a guilty man you
strike terror to wrong-doers, and so help to protect the
weak and the innocent. And this right to assist the
State in prosecuting a criminal who has wronged you,
is a right which every one, rich and poor alike, enjoy.
The question here is: 'Is this a guilty man?' not, 'Who
is prosecuting or assisting in the prosecution of this
case?' True, it may be said, this prosecuting company
has power to send to Atlanta, Rome, and along the line
of its road, and gather up witnesses to falsely swear
away this man's liberty. And you must consider the
likelihood and probability of its doing so, and must
fairly consider any and everything tending to show
that it has done so. Critically examine the question
in the light of experience and reason. Is it probable and
reasonable that this company, or its managers or agents,
actuated by a wicked and revengeful feeling against the
defendant or against John Smith and his friends, who
swore for him, or by any other motive, are now seeking
by perjury and subornation of perjury to cruelly punish
them for standing up for his rights? If you believe the
testimony of those of the defendant's witnesses who have
testified to you that there were no white men in that car,
then you must believe that those State's witnesses have
perjured themselves, and therefore on their evidence you
should not convict this defendant, But if you believe
the State's witnesses were there in the car, then the un-
true denial of their presence in the car by defendant's
witnesses is a circumstance to be considered against the
defendant. (But if on considering the evidence of the
State's witnesses you think, either from their manner of
testifying, or from their appearance, or from the sub-
stance of their evidence, or for any other reason, that

[Smith v. The State.]

they have been hired or suborned, or persuaded or otherwise induced to come here and perjure themselves, or if you think they have come here from their homes voluntarily to blacken their souls with perjury, in order to send this man to the penitentiary, then you must acquit), and must say by your verdict, we the jury find the defendant not guilty. (But if you see no just grounds to disbelieve the case as made by the State and its witnesses, and are convinced that in the matters material to the issues in the John Smith case, the defendant being duly sworn in manner as alleged in the indictment, testified willfully and corruptly to what was false, you should say, we the jury find the defendant guilty as charged in the indictment.)''

The defendant separately excepted to those portions of the general charge of the court, copied above, which are in parentheses, the exceptions being separately reserved at the time such portions of the charge were read to the jury.

The defendant also requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) ''The court charges the jury that, if they believe the evidence, they should find the defendant not guilty.'' (2.) ''The court charges the jury that, unless they believe from the evidence that the personal injuries, for which John Smith claimed damages in the civil suit mentioned in the indictment, were received by him within one of the beats of Calhoun county, Alabama, as now laid off, to-wit, Anniston precinct, No. 15, Oxford precinct, No. 13, DeArmanville precinct, No. 17, or Maddox precinct, No. 4, then you should find the defendant not guilty.'' (3.) ''The court charges the jury that if they believe from the evidence that acts or conduct of the agent or employé of the Richmond & Danville Railroad Company, which are alleged in the pleadings in the civil action for damages, mentioned in the indictment to have caused the personal injuries to John Smith, plaintiff in said action, were done or committed by such agent or employé in the county of Jefferson, and State of Alabama, then they should find the defendant not guilty.'' (5.) ''The court charges the jury that if they believe from the evidence that John Smith received the personal injuries in Jefferson county, Alabama, for which

he claimed damages in the civil action mentioned in the indictment, then you should find the defendant not guilty." (11.) "The court charges the jury that unless they believe from the evidence beyond a reasonable doubt, that the whole of the testimony set out in the indictment was willfully and corruptly false, then your verdict should be 'we the jury find the defendant not guilty.'" (12.) "The court charges the jury that if they believe from the evidence that any one of the facts charged in the indictment as having been falsely sworn to by the defendant was true, and had a real existence, then they should find the defendant not guilty, even though they should believe from the evidence that the defendant had no knowledge at the time he was testifying that the same was true." (13.) "The court charges the jury that, if they believe from the evidence, that the defendant testified in the civil action for damages, mentioned in the indictment, that the conductor took John Smith out of the rear door of the car, at the time John Smith was ejected from the train, near Irondale, then you should find the defendant not guilty." (14.) "The court charges the jury that if they have any reasonable doubt from the evidence as to whether the defendant bought a ticket at Anniston for Birmingham, for the train leaving Anniston for Birmingham on June 17th, 1891, then they should find the defendant not guilty." (15.) "The court charges the jury that if they have a reasonable doubt from the evidence whether the defendant got on the train with John Smith at Anniston, and sat in the same car with him until after leaving Irondale on June 17th, 1891, they should find him not guilty." (16.) "The court charges the jury that if they believe from the evidence that it is true that the conductor after leaving Irondale, June 17th, 1891, went to John Smith and demanded his fare to Birmingham, and that John Smith told the conductor that he had paid his fare to Birmingham, then you should find the defendant not guilty, even though you should believe from the evidence that the defendant did not know the same was true at the time he was testifying in the civil action for damages mentioned in the indictment." (17.) "The court charges the jury that they must find from the evidence, beyond all reasonable doubt, that the defendant testified to each and every fact in substance as the same is charged

in the indictment, before they would be warranted in returning a verdict of guilty against the defendant." (18.) "The court charges the jury that there is no evidence before them in this case upon which they should find that the defendant was sworn as charged in the indictment." (19.) "The court charges the jury that they must find from the evidence beyond all reasonable doubt that each and every fact charged in the indictment, as having been testified to by the defendant, was false, and had no real existence, before they would be warranted in returning a verdict of guilty." (22.) "The court charges the jury that you can not find that the defendant was sworn by the clerk of this court, unless the evidence convinces you of that fact beyond all reasonable doubt, and the testimony of the witnesses Shepperd and Wait is not sufficient to warrant you in finding that fact." (23.) "The court charges the jury that the mark on the subpœna docket opposite defendant's name is not sufficient to warrant you in finding that fact, unless the proof further satisfies you beyond all reasonable doubt that A. H. Shepperd made the mark at the time he called his name to be sworn."

T. C. Sensabaugh, for appellant.

Wm. L. Martin, Attorney-General, for the State.— The indictment sufficiently alleged every ingredient of perjury.—Crim. Code, p. 275, form 67 ; Code, § 3908 ; *Hicks v. State*, 86 Ala. 30; *Davis v. State*, 79 Ala. 20 ; *Peterson v. State*, 74 Ala. 34 ; *Williams v. State*, 68 Ala. 551 ; *Jacobs v. State*, 61 Ala. 448 ; *Barnett v. State*, 89 Ala. 165 ; *Walker v. State*, 96 Ala. 53 ; *Jones v. State*, 100 Ala. 35.

It is not a valid objection to an indictment for perjury that it charges, in one count, separate and distinct acts of perjury.—*Williams v. State*, 68 Ala. 551. Proof of any one of such acts will justify a conviction.—*Williams v. State*, 68 Ala. 551 ; 2 Bish. Cr. Pro., § 934; 2 Whar. Cr. Law, (9th Ed.), § 1301 ; Whar. Cr. Ev., §§ 131, 132, 134; *State v. Bishop*, 1 D. Chip. (Vt.) 120 ; *Com. v. Johns*, 6 Gray (72 Mass.) 274 ; *State v. Hascall*, 6 N. H. 352 ; *Harris v. People*, 64 N. Y. 148 ; *People v. Blanchard*, 90 N. Y. 314 ; *Webster v. People*, 92 N. Y. 422 ; *People v. Haynes*, 11 Wendell (N. Y.) 557.

The original papers in the damage suit were properly

admitted in evidence.—*Williams v. State*, 68 Ala. 551.

The city court of Anniston had jurisdiction of the suit in which the alleged perjury was committed.

COLEMAN, J.—At a term of the Anniston city court, the defendant was tried and convicted of perjury. It is insisted that the city court of Anniston had no jurisdiction of the civil case on the trial of which it was averred the offense of perjury was committed. That was a suit brought to recover damages for personal injuries, brought by John Smith v. The Richmond & Danville R. R. Co. The cause of action for which the civil suit was brought arose in Jefferson county, Ala., and territorially was beyond the limits of the area over which the city court of Anniston had jurisdiction. It is, therefore, contended that the city court had no jurisdiction of the civil cause. The act establishing the city court of Anniston, confers jurisdiction upon causes of action "arising within said designated limits whether the parties reside therein or not," but this provision does not limit, and was not intended to limit, the jurisdiction of the court to causes of action only arising within the designated limits. It has jurisdiction over all persons residing within the designated limits, without regard to where the cause of action arose, and in addition thereto to causes of action arising within the limits, whether the person resides therein or not, provided, of course, that he resides in the county of Calhoun. This is evident from reading the statute.— Acts 1888-89, pp. 871, 872.

The evidence shows without conflict that the Richmond & Danville Railroad Co. was running its trains within the "designated limits," and "was doing" business therein.—Code, § 2642 ; *Sullivan v. Sullivan Timber Co.* 15 So. Rep. 941. The exceptions were not well taken.

The State introduced in evidence, against the objection of the defendant, the original pleadings, and the rulings of the court, and the judgment of the court in the case of John Smith v. The Richmond & Danville R. R. Co. It was proven that the final record in the case had not been made up. There was no error in admitting this evidence.—*Williams v. The State*, 68 Ala. 551.

The court did not err in admitting the supoena docket of the case of John Smith v. The Richmond & Danville R. R. Co. The purpose of this evidence was to show

that the defendant was summoned as a witness, that he attended and was duly sworn. The testimony of the clerk, that he checked the names of the witnesses who were sworn and examined, and the check opposite the name of the defendant in connection with this testimony, were competent as tending to show that the defendant was sworn as a witness in the case.

There was evidence tending to show that defendant was duly sworn as charged in the indictment, and there was no error in refusing the general charge for the defendant.

A witness, who has testified in chief to the good character of the defendant, may be asked on cross examination whether or not he has heard of certain offenses, specifying them, charged against the defendant, before the beginning of the then pending prosecution. This is allowable only on cross examination, not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character.—*Moulton v. The State*, 88 Ala. 116; *Ingram v. The State*, 67 Ala. 72; *Moore v. The State*, 68 Ala. 362; *Holmes v. The State*, 88 Ala. 26; *Thompson v. The State*, 100 Ala. 70; *Lowery v. The State*, 98 Ala. 45.

The indictment in form strictly conforms to that given in the Code, to the statute, and to the requirements of the law as held in many cases.—Cr. Code, p. 275, § 3908; *Jones v. The State*, 100 Ala. 35; *Walker v. The State*, 96 Ala. 53; *Barnett v. The State*, 89 Ala. 165; *Hicks v. The State*, 86 Ala. 30; *Williams v. The State*, 68 Ala. 551.

The indictment charges as matters falsely sworn to, "that he, Sam Smith, saw John Smith buy a ticket at Anniston for Birmingham on said train; that he, Sam Smith, got on said train at Anniston, and sat in the same car with John Smith, and a little in front of him; that after leaving Irondale, the conductor went to said John Smith and demanded his fare to Birmingham;" and other substantive averments are made in the indictment, but this enumeration is sufficient for the purpose of considering the exceptions to portions of the general charge given by the court, and the refusal of the court to instruct the jury as requested by the defendant. The proposition involved in the exceptions is this, whether before the State could demand a conviction it was necessary to satisfy the jury beyond a reasonable doubt,

[Smith v. The State.]

that defendant committed perjury as to each and every
averment of the matter alleged to be material and false-
ly sworn to, or whether upon proof that the defendant
was guilty as to one or more of such averments, the jury
should convict, although, as to the other averments, the
State may have failed in its proof. The court held that
the latter was the correct rule, and in effect instructed
the jury, if they found that the defendant was guilty of
perjury in swearing that he saw John Smith buy a
ticket at Anniston for Birmingham as laid in the indict-
ment, it was their duty to convict him, although there
might be material matters charged in the indictment, as
to which the jury might be satisfied that defendant had
sworn truly. We are of opinion that the court ruled cor-
rectly on this proposition.

In 2 Wharton Cr. Law, § 1301, the law is stated thus:
"All the several particulars, in which the prisoner swore
falsely, may be embraced in one count, and proof of the
falsity of any one will sustain the count." In Bishop's
Criminal Procedure the rule is thus stated: "When
there are several assignments of perjury, proof of any
sufficient one will sustain the count." The text is sup-
ported by the following authorities, which are precisely
in point: *State v. Bishop*, 1 D. Chipman's Rep. (Vt.)
120; *Com. v. Johns*, 6 Gray (72 Mass.) 274; *State v. Has-
call*, 6 N. H. 352.

In the case of *Harris v. The People*, 64 New York 148,
it was charged that the defendant falsely swore that at
the time of the fire there was upon the premises "a stock
consisting of 60,000 cigars, 185,000 cigarettes, 400 lbs.
weight of Havana tobacco and 640 lbs. of Virginia tobac-
co." It was claimed on the trial that there was a vari-
ance in the number of cigars proven, and as averred.
The court used this language: "The variance was to
one of a number of distinct items as to which Harris was
charged with swearing falsely, and if the jury had found
that he swore falsely as to the other items, or as to any
one of them a verdict of guilty would have been proper.
When an indictment charges that the prisoner has stolen
a number of articles * * * * * * or has obtain-
ed goods by a number of false pretenses, or has sworn
falsely in an affidavit as to several facts, it is not neces-
sary to prove all that is charged. It is sufficient to prove
enough to make out the offense charged." The princi-

ple is recognized in the opinion in the case of *Williams v. The State*, 68 Ala., *supra*. Our conclusion is that where the indictment charges several distinct assignments of perjury, proof of either material assignment will authorize a conviction.

Construing the charge given by the court, *ex mero motu*, as a whole, we think it defines the law correctly as to what constitutes perjury. We find no error in the instructions given to the jury, to guide them in weighing the evidence of the witnesses, and in framing their own conclusions.

Charges twenty-two and twenty-three, requested by the defendant, are objectionable in that they invade the province of the jury, and are argumentative and misleading. The other charges requested assert propositions of law inconsistent with those declared in this opinion.

There is no error in the record.

Affirmed.

