# Hannegan *v.* The State.

## *Perjury.*

(Decided May 29, 1912.   59 South. 376.)

1. *Indictment and Information; Return; Statutory Provision.*—Provisions of Section 7152, Code 1907, are mandatory, and the indorsement on an indictment showing that it was presented in open court by the foreman of the grand jury to the presiding judge, and in the presence of fifteen other members of the grand jury shows a sufficient compliance with the provisions of said section.

2. *Perjury; Evidence.*—Where the two trials · were in the same court, and there was no evidence that the indictment had been recorded, the indictment in the case in which it was alleged that the perjury had been committed, together with the minute entry of the judgment, were admissible in the evidence in a prosecution for perjury.

3. *Same.*—Where the original trial was for homicide, and a witness in that case testified that he was standing on the platform of a baggage car when deceased came out on the platform of another car and fell from the train, it was competent, on the trial of such witness for perjury to show that the baggage car had no platform as bearing on the question as to whether or not such witness had willfully and corruptly sworn falsely.

4. *Same.*—Where the defendant in a perjury case, as a witness in a homicide case testified that he saw deceased ·go out on the platform of a car and fall off, and that the defendant in the homicide case did not go out on the platform, it was competent to show that the defendant and the deceased in the homicide case became engaged in a difficulty, that the defendant chased the deceased onto the platform and knocked him off with a whisky bottle, all of which happened in a short space of time, as tending to show that if the defendant in the perjury case saw the difficulty at all, he must have known that it happened in this way, and hence, that his testimony was willfully and corruptly false.

5. *Same.*—Evidence of any fact tending to prove the falsity or truth of the sworn statement, for which accused stands indicted, is relevant.

6. *Same.*—Where it appeared that all the witnesses sworn in the case in which it is alleged that the defendant committed perjury, were sworn in a body by the clerk, and that the defendant was seen going into the witness room under the rule after being sworn with the other witnesses, a page of the subpoena docket containing a list of the names of the witnesses summoned in the other case showing when the subpoenas were issued, and upon whom served, became admissible and competent as evidence.

[Hannegan v. The State.]

7. *Same; Elements of Offense.*—To be guilty of perjury, a person must not only have sworn falsely to a material matter, but his evidence must have been wilfully and corruptly false.

8. *Evidence; Best and Secondary.*—The admission of oral evidence as to the contents of a letter was proper where it appeared that the defendant in a homicide case had written a letter while in jail to the person on trial for perjury asking him to appear as a witness, and telling him what he desired him to testify to, and that the defendant in the perjury case afterwards visited the defendant in the homicide case, and promised to so testify, when the defendant in the homicide case on being called as a witness for the defendant in the perjury case denied that he had written such a letter, or had such conversation with the defendant in the perjury case.

9. *Appeal and Error; Harmless Error; Evidence.*—The admission of incompetent evidence is rendered harmless by the subsequent introduction of evidence rendering it competent.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Dan Hannegan was convicted of perjury and he appeals. Affirmed.

NORMAN GUNN, for appellant. The provisions of section 7151, Code 1907, are mandatory, and it must appear that the indictment was returned into open court. It is not sufficient that it is presented to the presiding judge.—*Scott v. The State,* 111 Ala. 39. The court erred in permitting the testimony as to what occurred on the car at the time of the homicide, and also in allowing the introduction of the indictment and minute entry of the judgment, and the subpoena docket in the homicide case, to be introduced in evidence.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The indictment shows a sufficient presentation.—*McKee v. The State,* 82 Ala. 32; *Stanley v. The State,* 88 Ala. 154. A motion to quash the indictment is in the irrevisable discretion of the trial court.—*Johnson v. The State,* 134 Ala. 54; *Mosely v. The State,* 1 Ala. App. 108; *Davis v. The State,* 2 Ala. App. 200. The demurrer was in sub-

stance a motion to quash, and subject to the same discretion.—*Black v. The State,* 123 Ala. 81; Section 7569, Code 1907. Counsel discuss exceptions to evidence and refused charges, but without further citation of authority.

DE GRAFFENRIED, J.—The defendant was indicted for perjury, was convicted by a jury, and from the judgment and sentence of the court following the verdict appeals. The indictment contains, among others, the following indorsement "Presented in open court to the presiding judge by the foreman of the grand jury in the presence of fifteen other members of the grand jury this 21st day of March, 1906. E. W. Long, Clerk."

The defendant, before pleading to the indictment, objected to being put upon trial under said indictment because the indictment shows that it was presented to the judge and not to the court by the foreman of the grand jury which found said indictment. Section 7152 of the Code provides that all indictments *must* be presented *to the court* by the foreman of the grand jury, in the presence of at least 11 other jurors. The provisions of this section are mandatory and *must* be complied with, and the above indorsement shows that, in the instant case, they *were* in all things complied with. The indorsement shows that it was presented in open court and presented to him who while the *court was open* represented its power and its dignity—the presiding judge —without whose presence no business could have been transacted, and the only person to whom the indictment could legally have been presented. The proposition announced in the case of *Scott v. State,* 141 Ala. 39, 37 South. 366, has no applicability to the question here presented.

In the case of *Williams v. State*, 68 Ala. 551, the Supreme Court, through Brickell, C. J., said: "The indictment in this cause, on the trial of which the perjury is charged to have been committed, and the minute entry of the judgment rendered on the trial, were admissible evidence. If it had appeared that the final record had been made up as required by law, that ought, probably, to have been produced. But it not appearing that this record had been made up, the original indictment being of the file and the minute entry of the judgment of the records of the city court, they were competent evidence." Because there was an *absence* of evidence tending to show that the indictment which was admitted in evidence had been recorded, and in this case—as was the situation in the *Williams Case, supra*—as the conviction of the appellant was had in the *court* in which the trial was had under the indictment which was introduced in evidence, and upon which trial appellant is alleged to have committed the perjury for which he stands indicted, we are of the opinion that the trial court committed no error in permitting the state to introduce in evidence the indictment and the minute entry.

3. It appears from the evidence in this case that Jeff Vanhorn was indicted for the murder of one Clark while they were traveling together as passengers on a train between Cordova and Dora in Walker county. In *that* trial, the evidence for the state tended to show that Vanhorn and Clark became engaged in a difficulty in a car in which there were two compartments. The rear compartment was used as a smoking room for white men. The front compartment was used for colored passengers, and immediately in front of the compartment for colored passengers was the baggage car. The difficulty which resulted in Clark's death occurred while

the train was traveling at its accustomed rate of speed.
There was evidence for the state tending to show that
Vanhorn first attacked Clark in said smoking compart-
ment; that Clark, to avoid the attack, ran through the
compartment for colored people out onto the platform
attached to said car, with Vanhorn in pursuit of him;
and that when Clark reached the platform Vanhorn
struck him and knocked him from the car, causing
wounds from which he died. The difficulty which re-
sulted in Clark's death seems to have been of very short
duration. To use the expression of one of the witnesses,
"It all happened right now."

That there was a difficulty between Vanhorn and
Clark, and that Clark ran from the smoking compart-
ment through the colored compartment of the car onto
the front platform of the car, there can be no doubt.
Vanhorn claimed that he did not leave the smoking car,
but that Clark ran through the colored compartment
onto the platform and *fell* from the car. The state's tes-
timony, as we have already stated, tended to show that
Vanhorn followed Clark through the colored compart-
ment to the front platform of the car and there struck
him with a whisky bottle, breaking the bottle, and
knocking Clark off the car. Vanhorn, to sustain the
theory of the manner in which Clark came to his death,
placed the defendant on the stand as a witness, and, ac-
cording to the testimony on behalf of the state in the *in-
stant* case, the defendant testified that he knew that
Vanhorn did not leave the smoking compartment on
which the difficulty between Vanhorn and Clark com-
menced and go into the colored compartment of said
car; that he (defendant) was on the *rear platform* of
the baggage car of the train on which said difficulty
took place and saw Clark come out of the colored com-
partment onto the platform and fall from the car; that

Vanhorn did not strike Clark with a whisky bottle and did not follow Clark through the colored compartment, but remained in the white compartment.

For the purpose of aiding the jury in ascertaining whether the above testimony of the witness was *willfully and corruptly false* the court permitted the state to offer evidence tending to show that the baggage car had no platform. This was manifestly proper. If the baggage car had no platform, then the defendant was not where he testified he was when Clark fell or was knocked from the car. In addition to this, the state was permitted, against the objection of the defendant, to prove that Vanhorn struck Clark with a whisky bottle while they were in the white compartment; that Clark ran, with Vanhorn behind him, to the platform and was there knocked by Vanhorn from the car; and that Vanhorn, on returning from the platform, said that he had knocked the son of a bitch off. All the testimony showed conclusively that from the inception of the difficulty until the return of Vanhorn from the platform—if, in fact, he went to the platform—was a very short space of time. As was said by a witness already quoted by us, "It all happened right now," and as the jury had a right to infer from the particulars of the difficulty between Vanhorn and Clark which the court allowed to go in evidence that these particulars were known to the defendant if he was on the car, and that, if he did know them, such knowledge tended to show that his testimony was willfully and corruptly false, the court committed no error in admitting in evidence the particulars of the difficulty of which the appellant complains. Evidence of any circumstance tending to show that the defendant knew that Vanhorn followed Clark from the smoking compartment onto the platform and there knocked him from the car, or that, if the defendant was in fact in the

car as claimed by him, he must have known it, was relevant.—*Floyd v. State,* 30 Ala. 511.

When a defendant is on trial charged with perjury, evidence of any fact which tends to prove the falsity or the truth of the sworn statement for which he stands indicted is relevant, and all of the evidence which the court permitted to go before the jury as to what occurred between Vanhorn and Clark immediately preceding and immediately after Clark's disappearance from the train—taken in connection with the defendant's claim that he was present—forming as it did a part of the res gestae of the difficulty, tended to throw light on the question as to the truth or falsity of the defendant's evidence on the Vanhorn trial, and was relevant.—Underhill on Criminal Evidence, § 468.

A man is not guilty of perjury who simply swears falsely to a material matter; his testimony must not only be material and false, but willfully and corruptly false. And the circumstances detailed by the witnesses for the state—that Vanhorn pulled a bottle from his pocket, struck Clark with it, then followed him as he ran onto the platform, and again struck him, knocking him from the train, breaking the bottle, and remarking that he had knocked the son of a bitch from the train—if *true,* all tended to show that the evidence given by the defendant on the Vanhorn trial, and about which he was indicted in this case, was not only false, but willfully and corruptly false.

4.   The state introduced in evidence the page of the subpoena docket which contained a list of the names of the witnesses summoned on behalf of the state and of the defendant, showing when the subpoenas were issued and upon what witnesses such subpoenas were served and upon what witnesses they were not served and the date of the service. In the case of *Smith v. State,* 103

Ala. 57, 15 South. 866, such a page of a subpoena docket was, under the peculiar facts shown and adverted to in that case, held to be relevant testimony. Taking into consideration the testimony of Sheriff Lacy, who swore that all of the witnesses who were sworn in the *Vanhorn Case* were called around and sworn by the clerk in a body, and the testimony of the witness Martin—that he remembered seeing the defendant "going into the witness room after being sworn with the *other* witnesses under the rule"—we are of the opinion that, under the facts in this case, the page of the subpoena docket was admissible.

5. A witness for the state testified that after Clark's death he was with Vanhorn in jail, and that Vanhorn there wrote a letter, in the presence of the witness, to the defendant, asking him to appear as a witness for him on his trial, and telling him what he desired him to swear; that a few days afterwards the defendant came to the jail and told Vanhorn, in the hearing of the witness, that he would appear and testify for him and would testify to the facts indicated in the letter. Against the objection of the defendant, the witness was permitted to state the contents of the alleged letter, stating that he read it as Vanhorn wrote it, and remembered its contents. Subsequently Vanhorn was placed upon the stand by the defendant and swore positively that he had never written said letter, and that he had never had a conversation of any sort with the defendant relating to any such letter. There was therefore merely a question of veracity between these witnesses, and, as the defendant claimed that no such letter had ever been written and was therefore not in existence, the question as to whether the court properly admitted secondary evidence of a writing—collateral to the main issues in the case—is not before us.

The rule is familiar that the erroneous admission of evidence, which is at the time inadmissible, is cured by the subsequent introduction of evidence which renders it admissible.—*Scott v. State,* 30 Ala. 503.

There were numerous other exceptions reserved by the defendant to rulings of the trial court as to the admission of evidence; but we have above discussed what we believe to be the salient questions presented by this record. The questions not discussed are regarded by us as patently without merit. We find no reversible error in the record, and the judgment of the court below is therefore affirmed.

Affirmed.