# Childress *v.* The State.

*Indictment for Larceny.*

1. *Jury law; statute providing for drawing of jury a general and not a special law.*—The act approved February 28, 1887 (Acts of 1886-87, p. 151), "to more effectually secure competent and well qualified jurors in the several counties of this State," is a general and not a local or special law, notwithstanding the exclusion of some counties from its operation; and its several provisions being embodied in the Code of 1896, were re-enacted by the adoption of said Code; and being, therefore, *in pari materia* must be construed together.

2. *Organization of jury; failure to state on lists of jurors their occupation, does not authorize quashing of venire.*—Under the provisions of section 4997 of the Code, no objection will be sustained to a venire for a petit jury, except for fraud in drawing and summoning the jurors; and, therefore, a failure on the part of the jury commissioners in making the list of names drawn for the jury, to state opposite the names the occupation of each of said jurors, as provided by section 4982 of the Code, is no ground for quashing the venire, such provision being directory merely.

3. *Larceny; admissibility of evidence.*—On a trial under an indictment charging larceny of money, the testimony of the person

[Childress v. The State.]

to whom the money alleged to have been stolen belonged, that his son told him that the defendant had been in the drawer from which the money was taken during the prosecutor's absence, is hearsay evidence and, therefore, inadmissible.

4. *Same; same.*—On a trial under an indictment for larceny of money, which the evidence tends to show was taken from the drawer of a sewing machine, testimony that the defendant's mother had a similar sewing machine, to the one wherein the money was placed before it was stolen, is inadmissible.

5. *Same; same.*—On a trial under an indictment for the larceny of money, testimony that the defendant attempted to borrow money shortly after the alleged theft is admissible.

6. *Same; same.*—In such a case, evidence that the father of the defendant attempted to borrow money for him is inadmissible in the absence of other testimony tending to show that the defendant authorized such attempt, or was present when it was made.

7. *Same; same.*—On a trial under an indictment charging the larceny of money, testimony that the person from whom the money was alleged to have been stolen had agreed to stop the prosecution if the defendant or his father would restore the stolen money, is inadmissible.

8. *Same; same.*—On a trial under an indictment charging the larceny of money, where it is shown that the defendant was a brother of the prosecutor's wife, testimony that the prosecutor and his wife had complained that defendant was getting more than his share of his father's estate, as evidencing the feeling that existed between the prosecutor and the defendant's father, is inadmissible.

9. *Same; same.*—In such a case, testimony that the prosecutor had declared that a fortune teller had told him that the defendant had stolen his money, is immaterial; and such testimony is incompetent even for the purpose of impeachment.

10. *Same; charge to the jury.*—On a trial under an indictment charging the larceny of money, charges to the jury which instruct them that they should acquit if the statement of a certain witness is unreasonable and the other evidence is insufficient to sustain a conviction, or if it is believed that another person could have taken the money, and to receive with care the testimony of a witness if it is believed that a certain statement is unreasonable, and not to be quick to disregard testimony of defendant's witnesses because they are relatives, are properly refused as being argumentative.

11. *Same; same.*—In such a case, charges which instruct the jury

[Childress v. The State.]

that they should acquit the defendant if other persons had as good an opportunity to take the money as defendant, and that the mere fact of defendant's presence in the prosecutor's house when the money was alleged to have been stolen is in sufficient to sustain a conviction, are properly refused, as invading the province of the jury.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant, Gordon Childress, was indicted, tried and convicted for the larceny of a twenty dollar gold piece, the personal property of one Jeff Gurley. The defendant moved the court to quash the venire for the petit jury, upon the ground that the jury commissioners had not complied with the mandate of the law, in that they had failed, in making the list of the names drawn for the jury, to state the occupation of each of said jurors, although the occupation of said jurors was known to the jury commissioners at the time of the drawing of the jury.

It was admitted by the State that on the list of the jurors drawn for the present term of the court and placed in the envelope filed in the office of the judge of probate the occupation of the jurors was not stated. The motion to quash was overruled, and the defendant duly excepted.

On the trial of the case the State introduced as a witness Jeff Gurley, who testified that one night shortly after Christmas in 1897, he and his wife went to the house of one Jim Phipps, a short distance from his own home to attend a dance, leaving at their home their two little children; that he left in the drawer of a sewing machine a twenty dollar gold piece and a ten dollar and a five dollar bill. That he was in the habit of keeping his money in this machine drawer; that the defendant, who was his wife's brother, visited his house often and knew that he kept money in said machine drawer. That on the night of the dance he locked the drawer and took the key with him; that on the morning after the dance, he unlocked the machine drawer and the money was gone. This witness then testified that he asked his children who had been in the drawer that night, and that his little boy

answered that "his uncle Gordon [the defendant] had been in the drawer looking for tobacco." The defendant objected and moved to exclude the testimony as to what the plaintiff's son told him, on the ground that it was mere hearsay evidence. The court overruled the objection and motion, and to this ruling the defendant duly excepted.

The defendant, on cross-examination, asked the witness the following question: "Did you, on the day of your return from Huntsville, tell Roberta Cotten that you had consulted a fortune teller who told you Gordon Childress took your money?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. The defendant then asked the witness the following question: "Did you tell the defendant or his father that if they would pay you twenty dollars you would stop this prosecution?" The court sustained the objection interposed by the State to this question, and the defendant duly excepted. Defendant then asked the witness the following question: "Did you tell Gordon Childress, on the day after your return from Huntsville, at Charles Childress' front gate that a fortune teller told you that he, the defendant, got your money?" The solicitor objected to this question, the court sustained the objection, and the defendant duly excepted. Defendant then asked the witness the following question: "How much cotton did Charles Childress, the defendant's father, make that year?" The solicitor objected to that question, the court sustained the objection, and the defendant duly excepted. Defendant then asked the witness this question: "How long had it been since Charles gave your wife anything by way of advancement?" The solicitor objected to this question, the court sustained the objection and the defendant duly excepted. The defendant then asked the witness the following question: "Did not you and your wife complain that she was not getting her share?" The solicitor objected to this question and the court sustained the objection, and the defendant duly excepted. Defendant then asked the witness the following question: "Did you not complain that Gordon was getting more than his

share?" The solicitor objected to this question, the court sustained the objection, and the defendant duly excepted. The defendant asked the witness the following question: "What sort of feelings have existed between you and the defendant's father for several years past?" The solicitor objected to the question, the court sustained the objection, and the defendant duly excepted.

On re-direct examination, after the witness Jeff Gurley had testified that the machine, from the drawer of which the money was taken, was what was known as a Wheeler & Wilson machine, the solicitor for the State then asked the witness the following question: "Did not the defendant's mother have a Wheeler & Wilson machine?" The defendant objected to this question, because it called for irrelevant, immaterial and incompetent evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that the defendant's mother did have such a machine, the defendant moved to exclude the answer from the jury, on the ground stated to the objection to the question, and duly excepted to the court overruling his motion.

One Eslinger, a witness for the State, testified that the defendant came to his store to pay an account of $1.75, and handed him a twenty dollar gold piece to change; that he took it out of a red striped tobacco sack, and that after the money was changed the witness saw in the defendant's purse one or two bills. The solicitor for the State then asked said witness the following question: "Did you see the defendant, on the same day, after you had changed the money for him try to borrow a quarter from a negro boy?" The defendant objected to this question, because it called for illegal and immaterial evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that he did see the defendant try to borrow a quarter from a negro boy, the defendant moved to exclude said answer from the jury, upon the same ground which constituted the objection to the question. The court overruled the motion, and the defendant duly excepted. The solicitor for the State then asked the witness, "Did you

[Childress v. The State.]

also see his father try to borrow a quarter from a negro boy for Gordon (the defendant)?" The defendant objected to this question, upon the same grounds interposed to the preceding question, and duly excepted to the court's overruling his objection. Upon the witness answering that he did, the defendant moved to exclude this answer upon the same grounds, and duly excepted to the court's overruling his motion.

Connally Gurley, the son of Jeff Gurley, was introduced as a witness and testified that on the night of the dance at Jim Phipps' he remained at home; that one Will Neeley came to the house and bathed his head, and that just after he left, Gordon Childress, the defendant, came in and after standing before the fire awhile, went over to the machine; that he heard the defendant fooling with the drawer, and upon asking him what he wanted, the defendant said he was hunting for some tobacco; that he looked around and the defendant came towards the fire with something in his hand like a key. There was other evidence introduced for the State tending to show that the defendant was at the dance the night in question, and that during the dance the defendant was missed, and he was seen at the house of Jeff Gurley.

The defendant introduced his father as a witness, who testified that just before Christmas, 1897, he gave the defendant a twenty dollar gold piece to have changed for him, and told the defendant that he might pay Mr. Eslinger a small account which he, the defendant, owed him; that the defendant brought the change back to him and also a ten dollar bill which he said a debtor of the witness had paid the defendant for the witness. That the defendant worked for the witness and he frequently gave the defendant money. The defendant then asked the witness the following question: "Did Jeff Gurley tell you he knew Gordon stole his money because a fortune teller had told him so?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. The defendant asked similar questions of other witnesses introduced in his behalf, and excepted to the court's overruling objections inter-

posed by the State to each of such objections.

The defendant asked his father, who was being ex-
amined as a witness, if he and Jeff Gurley had been on
good terms for the last few years? The court sustained
the State's objection to this question, and the defendant
duly excepted. There was other testimony introduced
in behalf of the defendant tending to show that at the
dance the wife of Jeff Gurley was selling refreshments,
and that during the dance she gave a key to her machine
drawer to one Charlie Humphrey and asked him to go
to her house, unlock the drawer of the machine, and
bring to her the change which he would find there, tell-
ing him at the time that she needed the change in order
to change money for her customers; and further that
Willie Neeley went to the house of Jeff Gurley on the
night of the dance in order to wash a wound on his head.

The defendant as a witness in his own behalf, testified
that he was at the dance at Jim Phipps, but did not go
to Jeff Gurley's house that night, and did not take Jeff's
money, and that he knew nothing of the taking of the
money until about two weeks after the dance, when Jeff
Gurley came to his house and demanded his money, and
said that he had been told by a fortune teller that de-
fendant had took it. The solicitor objected to this last
statement, and the defendant duly excepted to the sus-
taining of this objection. In rebuttal Jeff Gurley testi-
fied that the money taken from him on the night of the
dance was in a red striped tobacco sack.

The defendant requested the court to give to the jury
the following written charges, and separately excepted
to the court's refusal to give each of them as asked: (1.)
"The statement made by the witness Connally Gurley
that the defendant came to the prosecutor's house dur-
ing the night and obtaining entrance and going directly
to the machine while the children were awake, may oc-
cur to some of you to be unreasonable, and if it does it
is your duty to find the defendant not guilty, unless
you think there is enough evidence without that of the
aforesaid witness to satisfy your minds of the guilt of
the defendant beyond a reasonable doubt." (2.) "If the
jury believe that Charley Humphrey had a better op-

portunity to take the money than the defendant, this would be sufficient grounds to generate a reasonable doubt, and therefore of the defendant's acquittal." (3.) "If the jury believe that Pink Gurley, the wife of the prosecutor, gave Charley Humphrey or any one else the key to the drawer where the money was kept, and told him or any one else to bring her some change out of the drawer, then the evidence would be that some one else could have taken the money; and if from the evidence you believe another person could have been guilty or could have taken the money, it is your duty under oath to acquit the defendant." (4.) "If the jury believe that any man not the defendant went into prosecutor's house on the night of the alleged larceny after the prosecutor and his wife went to a dance, then they may reasonably believe that some one besides the defendant may be the guilty party, and if they so believe they should find the defendant not guilty." (5.) "If the jury believe that the wife of prosecutor had the key to the machine drawer, and that she sent a third party to her house to get the money this is a circumstance to which you may look to see if some other person may be the guilty party; and if they believe some person, not the defendant might have taken the money under this evidence, they should find the defendant not guilty." (6.) "If the jury believe that Charles Humphrey went to the house of Jeff Gurley you may think he might be the guilty party; and if you do, you must acquit him." (7.) "The jury may look to the statements of the witness Connally Gurley, as to his staying awake until his father returned at a late hour in the night, and if they think he makes an unreasonable statement about this, they should also receive with care, his other evidence in the case." (8.) "If the jury believe that George Gurley could have been guilty of the offense charged in this case, then they should find the defendant not guilty." (9.) "If you believe from the evidence that Jeff Gurley's house was unoccupied save by his small children on the night the money is alleged to have been taken, and other persons than the defendant had access to said house and did enter the same, and it is as reasonable to suppose

that said money could have been taken by such persons as easily as by the defendant, it is your duty to find the defendant not guilty." (10.) "The mere absence of the money from the place where it was last seen by the witness Jeff Gurley, is not of itself sufficient to establish the offense of larceny, and if there be no evidence independent of that fact, that said money was stolen, then it is your duty under the law to acquit the defendant, and you must find him not guilty." (11.) "If the jury believe the evidence they must find the defendant not guilty." (12.) "Under the evidence in this case, if the jury can reconcile the evidence by believing that some other person could have gotten the money besides the defendant, it is their duty to do so, and they should acquit the defendant if they so believe." (13.) "The mere fact of defendant's presence in Jeff Gurley's house on the night his money is alleged to have been stolen, is not of itself sufficient to fasten the crime upon the defendant, and if the evidence shows no other fact or circumstance connecting defendant with said larceny, then you must find the defendant not guilty." (14.) "If the jury believe that it is improbable that a man would go into a drawer in the room where other persons were and take money from the drawer, then take the key in his hand and walk up to the fireplace, showing the key to those present, then there would arise a doubt of the dignity of a reasonable doubt, and it would be your duty to acquit him. (15.) "If the house of Jeff Gurley was unfastened and unguarded on the night the money is alleged to have been stolen, and other persons than defendant had access to said house, and as good opportunities of taking said money as defendant, then you must find him not guilty." (16.) "You should not be quick to disregard the testimony of witnesses for the defendant, because they are relatives of his, because most of the transactions of men in the daily routine of business are carried on either with, or in the presence of relatives, and you may remember that there are many incidents in the lives of some of you which if you were called upon to explain without the aid of your relatives, might greatly embarrass you." (17.) "If Jeff Gurley's

house was in the neighborhood of the house where the numerous persons were assembled for pleasure, and if said house was unoccupied, except by children who were asleep, and there were numerous persons who could have gone into the house while said children were asleep, then the full measure of proof the law requires has not been made, and you should find him not guilty." (18.) "If other people than the defendant had access to the house where the money is alleged to have been, and such other persons had opportunities of taking said money, equal to defendant's opportunity, it is your duty to give the defendant the benefit of the doubt necessarily arising therefrom, and you must find him not guilty." (19.) "If the jury believe some other person had as good or better opportunities to take the money than the defendant, then you must find him not guilty." (20.) "If the jury believe that Jeff Gurley tried to control the answers of witnesses, then this is a circumstance which will affect the credibility of the said Jeff Gurley as a witness."

GRAYSON & FOSTER, for appellant, cited *Davis v. State,* 68 Ala. 64; *Steele· v. State,* 111 Ala. 33; *Johnson v. State,* 102 Ala. 21; *Chilton v. State,* 105 Ala. 98; 1 Amer. & Eng. Encyc. of Law, 473.

CHAS. G.· BROWN, Attorney-General, for the State, cited *Rogers v. State,* 117 Ala. 9; *King v. State,* 120 Ala. 329; *Teague v. State, Ib.* 309; *Crawford v. State,* 112 Ala. 1.

SHARPE, J.—The act of February 28th, 1887, copied into the Criminal Code of 1886, p. 132, was a general law notwithstanding the exclusion of some counties from its operation. Its provision directing the jury commissioners to state on the list of jurors selected by them the names and residences of the persons so selected, is embodied in section 4982 of the present Code, and was re-enacted by the adoption of the Code simultaneously with the other sections of the same chap-

ter, and the several provisions being *in pari materia* must be construed together.—*Baker v. State, ante,* p. 1.

By section 4997 of the same chapter the provision in question is made directory merely, and the same section prohibits objection to any *venire facias* for a petit jury except for fraud in drawing and summoning the jurors. The defendant's motion to quash the venire was, therefore, properly overruled.

We find error, however, in the admission of the testimony of the State's witness Jeff Gurley, to effect that his son told him that defendant had in his absence been in the drawer from which the money was missed looking for tobacco. This statement was incompetent, being hearsay merely, and its tendency was to injure the defendant's cause by connecting him with the disappearance of the money.

We are unable from anything appearing in the record to see the relevancy of this witness' statement that the defendant's mother had a Wheeler and Wilson sewing machine.

While it was competent for the State to show the defendant's conduct in trying to borrow money shortly after the alleged theft, yet the attempt of defendant's father to borrow a quarter for him appears to have been incompetent, it not appearing that defendant authorized the attempt or was present when it was made. With these exceptions the rulings of the trial court both in the admission and exclusion of evidence appear to have been free from error.

That Jeff Gurley said a fortune teller told him defendant got the money was immaterial, and for that reason was incompetent even for the purpose of impeaching the witness. Likewise the defendant's other questions which were not allowed to be answered called for matters immaterial and incompetent as evidence. The defendant was not injured by any action of the court in reference to the statement of Della Vann.

There was no error in the refusal of charges to the defendant. Those numbered 10, 11 and 20 were abstract. Nos. 1, 3, 4, 5, 7, 9, 14, 16 and 17 were argumentative.

The remainder invaded the province of the jury, and most of them were also argumentative.

For the errors pointed out the judgment must be reversed and the cause remanded. The defendant will be held as the law requires until discharged by due course of law.

Reversed and remanded.