# White *v.* The State.

*Indictment for Murder.*

1. *Trial and its incidents; service of copy of indictment on prisoner; when no variance shown.*—Where a defendant is indicted for murder, it furnishes no ground for objection to his being put upon his trial, that in the copy of the indictment served upon him, as required by the statute, the name of the person alleged to have been killed was stated to be "Jack Gorden, alias John Gorden," while in the original indictment the name of the person alleged to have been killed was stated to be "Jack Gordon alias John Gordon," the names "Gorden" and "Gordon" being *idem sonans,* and therefore not constituting a variance.

2. *Organization of jury in capital case; failure to state on list of jurors served upon defendant their residences does not authorize quashing venire.*—The fact that on the list of

[White v. The State.]

jurors served upon the defendant in a capital case the residences of the persons constituting the venire drawn for such case are not given, furnishes no ground for quashing the venire; and this is true, although the slips drawn from the jury box containing the names of the jurors drawn did sta e their residences.

3. *Competency of child as witness.*—The admissibility of children as witnesses depends not merely upon their possessing a competent degree of understanding, but also in part upon their having received such a degree of religious instruction as not to be ignorant of the nature of an oath, or of the consequences of a falsehood.

4. *Same; when child shown to be competent.*—When a child is introduced as a witness, and upon his examination *voir dire* he testifies that he is "going on 12 years" old; that he has never been to Sunday School, nor to church;" that "the bad man will get" boys who do wrong, and that a boy who swore a lie would be hung, and that a boy ought to tell the truth, and in answer to a question "who made you?" he replie. "Jesus Christ;" such witness is shown to be competent, and the court commits no error in allowing him to testify.

5. *Same; when witness shown to be incompetent.*—On the examination *voir dire* of a child of tender years, who is shown to be less than 12 years of age, he testified that he did not know how old he was, had never been to Sunday school or church; did not know who made him; that "the bad man would get bad boys when they died," that he did not know what became of good boys, that it was wrong to tell a lie, that no one had ever told him about God or Jesus Christ; had never heard anything about heaven, did not know anything about boys being put in jail for swearing to lies, nor what ought to be done to such boys, did not know what was being done when he held up his hand to take the oath, and in answer to a question as to who made him, he testified "The Lord." *Held:* Such witness is snown to be incompetent, and the court errs in admitting the witness to testify.

6. *Admissibility in evidence of expert testimony.*—On a trial under an indictment for murder, a witness who was on the coroner's jury which held the inquest over the body of the deceased, and who is not shown to have been an expert, is not competent to testify as to how long the deceased ha.. been dead when ne, the witness, saw him.

7. *Trial and its incidents; improper argument of attorney.*—Where an attorney for the defendant in his argument to the jury states that the defendant's position was that he did not do the killing, and was not at the house of the deceased on the

night of the killing, and that recognizing that it was possi'
for the jury not to be entirely satisfied with such evidence,
it was right that the court should instruct the jury "with
regard to the effect of drunkenness upon the question of the
degree of the homicide," the solicitor for the State in his
closing argument transcends the limits of legitimate argu-
ment when, in response to such statement of defendant's
counsel, he says: "Counsel for the defendant recognizes the
weakness of the defendant's case. Who is a better judge of
his client's guilt or innocence than the counsel representing
him? Counsel knew that under this evidence he could not
maintain the innocence of his client, else why did he ask
the court to charge the jury upon the law of drunkenness as
it affects the degree of homicide? It was an admission on
his part that he knew his client was guilty."

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

The appellant in this case Walker White, was indicted
and tried for the murder of Jack Gordon, was convicted
of murder in the second degree and sentenced to the
penitentiary for twelve years.

The facts of the case upon which the defendant ob-
jected to being put on his trial, because he was not
served with a true copy of the indictment, as required
by the statute, are sufficiently shown in the opinion.

The defendant also objected to going to trial and
moved the court to quash the venire of jurors drawn to
try his case, upon the ground that a copy of the venire
for his trial had not been served on him or his counsel
at least one entire day before the day set for trial; the
ground of the objection and motion being that the copy
of the venire served on him did not constitute a copy
of the special venire in the defendant's trial, because it
did not show the residence of either the regular jurors
drawn for the week or the special jurors drawn for the
trial. The court overruled the objection and motion,
and to this ruling the defendant duly excepted.

Upon the State offering to introduce one George
Gordon as a witness the defendant objected to the in-
troduction of said witness upon the ground of his ten-
der years, and thereupon the court proceeded to examine

the witness on his *voir dire.* In answer to the question propounded to him as to how old he was, the witness replied :"Going on 12 years;" the court then asked him, where he lived, how long he had been living at such place and to each of these questions the witness answered intelligently. The examination *voir dire* was then continued as follows:

Q. "Have you ever been to Sunday School?"

A. "No, Sir."

Q. "Have you ever been to church?"

A. "No, Sir."

Q. "What do you think of boys that do wrong?"

A. "The bad man will get them."

Q "What do you think they would do with a boy that swore a lie?"

A. "Hang him."

Q. "Do you think that a boy ought to tell the truth or a lie?"

A. "The truth."

Q. "Who made you?"

A. "Jesus Christ." The court declared the witness competent to testify and overruled the defendants' objection to his competency, and to this ruling the defendant duly excepted. This witness, who was a son of the deceased, Jack Gordon, testified to the defendant having killed his father by stabbing him several times with a knife. Upon the State offering to introduce Hubert Gordon as a witness, the defendant objected to his competency on account of his tender years. The examination of this witness on *vior dire* is shown in the opinion. Upon this examination the court held the witness competent and permitted him to testify against the defendant's objection, and to this ruling the defendant duly excepted. The witness Hubert Gordon testified to substantially the same facts to which his brother George Gordon testified, stating that the defendant killed Jack Gordon by stabbing him with a knife.

Upon the introduction of Watson Guest, he testified that he was a member of the coroner's jury that examined the body of Jack Gordon after he was killed. It was shown that the coroner's inquest was held the day after the killing of the deceased, which occurred between

10 and 12 o'clock at night. During the examination of the witness Guest, the solicitor asked him the following questions: "how long, in your judgment, had the man been dead when you saw the body?" The defendant objected to this question on the ground that it called for a conclusion of the witness and not a fact, and on the further ground that the witness was not shown to be an expert, and qualified to state his conclusions to the jury. The court overruled the objection, and the defendant duly excepted. There was other evidence introduced by the State tending to show that the defendant killed Jack Gordon.

The defendant introduced evidence tending to establish an *alibi*, and as a witness in his own behalf the defendant testified that he did not kill the deceased Jack Gordon. There was also evidence tending to show that on the night of the killing the defendant was drunk.

The bill of exceptions contains the following recitals in reference to the argument of counsel: "In his argument counsel representing the defendant said to the court in the hearing of the jury: "So far as the law of this case is concerned I have, as an officer of this court, only one suggestion to make. Our position is that the defendant did not do this killing; that he was not at Jack Gordon's on the night of the killing. We can not and do not consider it within the range of possibilities that the jury should find this evidence sufficient to convince them that the defendant was there and did the killing; but nevertheless it is right that the court should instruct the jury with regard to the effect of drunkenness upon the question of the degree of homicide.' And then counsel for the defendant addressed the jury insisting that defendant was not guilty of any offense whatever under the evidence. The solicitor in his closing argument for the State among other things said to the jury: 'Counsel for the defendant recognized the weakness of the defendant's case. Who is a better judge of his client's guilt or innocence than the counsel representing him? Counsel knew that under this evidence it could not maintain the innocence of his client, else why did he ask the court to charge the jury upon the law

of drunkenness as it affects the degree of homicide? It was an admission on his part that he knew his client was guilty.' Counsel for the defendant objected to this argument on the part of the solicitor, called the attention of the court to the argument, and asked the court to exclude the remarks from the jury. The court overruled defendant's objection and refused to exclude the remarks of the solicitor from the jury. The defendant then and there duly excepted to this action of the court."

GOODHUE & BLACKWOOD, for appellant.—The court erred in overruling defendant's objection to being put upon his trial, and his motion to quash the venire, upon the ground that a copy of the venire had not been served upon him as required by the State. The venire served upon the defendant does not show the residence of a single one of the jurors. The statute requires this, and the defendant was entitled to the information.—Code, §§ 4982, 4983; *Jones v. State*, 104 Ala. 30.

The court erred in holding that the witness George Gordon and the witness Hubert Gordon were competent and in allowing them to testify. *McKelton v. State*, 88 Ala. 181; *Besson v. State*, 72 Ala. 191; *Carter v. State*, 63 Ala. 52; *State v. Mitchell*, 37 W. V. 570; 7 Amer. & Eng. Encyc. of Law, pp. 268, 269, 270; *Williams v. State*, 12 Tex. App. 127; *Rex v. Williams*, 7 C. & P. 320; 32 E. C. L. 524.

MASSEY WILSON, Attorney-General, for the State. There was no variance between the indictment served on the defendant and the original indictment. The words "Gordon" and "Gorden" are *idem sonans* and the copy of the indictment served upon the defendant was sufficient.— *Munkers v. State*, 87 Ala. 96; *Nutt v. State*, 63 Ala. 180.

The record and bill of exceptions show, that the order of the court and the venire served upon the defendant, were in compliance with the statute.—*Burton v. State*, 107 Ala. 108; Code, § 5005; *Chilton v. State*, 122 Ala. 21; Code, § § 4982, 4997. .

The *voir dire* examination of the witnesses George and

Hubert Gordon showed that they were competent to testify.—*McGuff v. State,* 88 Ala. 147; *Grimes v. State,* 105 Ala. 86; *Williams v. State,* 108 Ala. 65.

It was not error for the court to allow the witness Guest to testify as to how long deceased had been dead when he saw his body.—11 Amer. & Eng. Encyc. of Law, (2d ed.) 513 et seq.; *Hudson v. State,* 61 Ala. 333.

An ordinary witness may give his opinion on a subject of this kind, it being a matter of common knowledge, which persons of ordinary intelligence, including jurors themselves, are just as capable of comprehending as the witness.—*E. T. V. & G, R. Co. v. Watson,* 90 Ala. 41; 12 Amer. & Eng. Ency. of Law, (2d ed.), p. 488.

DOWDELL, J.—The appellant was indicted together with Everett White for the murder of one Jack Gordon *alias* John Gordon. A severance was had, and the appellant was tried alone, the trial resulting in a conviction for murder in the second degree.

On the day set for the trial, the defendant objected to being put upon his trial, assigning as a ground therefor, that he had not been served with a copy of the indictment one entire day before the day of his trial pursuant to the order of the court. This objection was rested upon the grounds, that in the copy of the indictment served upon him, the name of the person alleged to have been killed was stated to be Jack Gorden *alias* John Gorden, whereas in the original, the name of the person alleged to have been killed, was stated to be Jack Gordon *alias* John Gorden. The objection was without merit. The names Gordon and Gorden being *idem sonans,* the copy served was sufficient.—*Munkers v. State,* 87 Ala. 96; *Nutt v. State,* 63 Ala. 180.

The motion to quash the special *venire* on the ground of a variance between the original and the copy served on the defendant was properly overruled by the court. The record and the bill of exceptions show that the orders of the court and the *venire* served upon the defendant, were in compliance with the statute. The sheriff is required to serve a copy of the special *venire* drawn, together with a copy of the jurors drawn

[White v. The State.]

and summoned for the week in which the trial is to be had, when the term of the court is for more than one week, upon the defendant.—Code, § 5005; *Burton v. State,* 107 Ala. 108, 112. The ground of variance alleged was the omission in the copy served, of a statement of the residences of the jurors. The provision of the statute directing the jury commissioners to state on the list of jurors selected by them, the residences of the persons as selected, is directory merely; and the fact that the slips drawn from the jury box did state the residences, did not necessarily require that the copy served on the defendant should contain that information.—Code, § 4997; *Childress v. State,* 122 Ala. 21, 30.

An exception was reserved to the ruling of the court on the competency of the witness George Gordon, on his *voire dire* examination. This exception however, is not insisted on in argument by appellant's counsel. We think the *voir dire* examination, clearly demonstrated the competency of this witness, and the court committed no error in admitting him to testify.—*McGuff v. State,* 88 Ala. 147; *Grimes v. State,* 105 Ala. 86; *Williams v. State,* 109 Ala. 65.

We are, however, of a different opinion as to the correctness of the City Court's ruling upon the competency of the witness Hubert Gordon. This witness was a child of tender years; the record does not disclose his exact age, only that he was younger than his brother George Gordon, who was "going on twelve years." On his examination *voir dire,* the following questions were asked and responses made: Q. "How old are you?" Ans. "Don't know." Q. "Where do you live?" Ans. "Jail." Q. "Did you ever go to Sunday School or Church?" Ans. "No." Q. "Who made you?" Ans. "Don't know." Q. "What becomes of bad boys when they die?" Ans. "Bad man get 'em." Q. "What becomes of good boys when they die?" Ans. "Don't know." Q. "Is it right or wrong to tell a lie?" Ans. "Wrong." Q. "Do you know where the 'chicken farm' was?" Ans. "No." Q. "Is there any town near the 'chicken farm?'" Ans. "No, sir." Q. "How about Attalla, is it near there?" Ans. "Attalla is way off yonder." Q. "Did

5c

any one ever tell you about God or Jesus Christ?" Ans. "No." Q. "Do you know what becomes of good little boys when they die?" Ans. "No." Q. "Did you ever hear anything about Heaven?" Ans. "No, sir." Q. "Who made you, Hubert?" Ans. "The Lord." Q. "Where will you go if you swear a lie?" Ans. "Bad man get me." Q. "What becomes of good little boys that die?" Ans. "Don't know." Q. "Do you know anything about boys being put in jail for swearing lies?" Ans. "No, sir." Q. "Do you know what ought to be done with boys that swear lies?" Ans. "No, sir." Q. "When you held up your hand awhile ago did you know what was being done?" Ans. "No, sir." Q. "Do you know what it is to be sworn?" Ans. "No, sir." Q. "Is it right or wrong to tell a lie?" Ans. "Wrong." Q. "Do you know what ought to be done with a boy that swears a lie?" Ans. "No, sir." There was evidence in the case that the "chicken farm" was the place where the alleged murder was perpetrated, and that the witness Hubert was living there at the time with his father, the deceased, and that the "chicken farm" was within half a mile to a mile of the town of Attalla. We think the foregoing examination demonstrated that degree of intellectual and moral deficiency, which would render the party incompetent to testify as a witness. He clearly had no conception of the solemnity of an oath, and did not as much as know what it was to be sworn. He was wanting in that religious training and instruction which excites a hope of future reward to the good; and a fear of punishment to the wicked, and he was without any knowledge of punishment visited by the law of the land for false swearing. As was said in *McKelton v. State,* 88 Ala. 181, "The rule is, that persons that have no comprehension of the nature and obligation of an oath, and are incapable of appreciating their responsibility for its violation, should not be admitted as witnesses; and this without regard to the cause from which the defect has arisen, and hence without reference to the age of the witness." While recognizing the rule, that in passing upon the capacity of children of tender years to testify, much must be left to the sound discretion of the

trial court, and that it is only in strong cases the ruling of the court admitting them as witnesses should be reversed, we are of the opinion in the present case, and feel so constrained to hold, that the court erred in admitting the witness Hubert Gordon to testify. *McKelton v. State*, 88 Ala. 181; *Beeson v. State*, 72 Ala. 191; *Carter v. State*, 63 Ala. 52; *State v. Mitchell*, 37 W. Va. 570.

The general rule is, that a non-expert witness should not be permitted to testify his opinion, but should be confined to a statement of the facts—the jury being as capable after hearing the facts, to the formation of an opinion, as the witness is. The question asked the witness Guest, and in answer to which, he gave his opinion, called for matter of expert knowledge; that is, how long the deceased had been dead, when witness saw him. The witness was not shown to be an expert, nor is it pretended that he was. The court erred in permitting him to state his opinion against the objection of the defendant.

In other rulings upon the admission and rejection of testimony, we think the action of the court was free from error.

The remarks of the solicitor in his closing argument to the jury, which were objected to by the defendant, were improper, and should have been arrested by the court on motion of defendant.

For the errors pointed out the judgment will be reversed and the cause remanded.