# Andrews *v.* The State.

## *Murder.*

(Decided Feb. 4, 1909.  48 South. 858.)

1. *Criminal Law; Jurisdiction; Transfer of Causes; Bessemer City Court.*—Where the transcript from the criminal court of Jefferson county as copied into this record discloses that on motion of defendant an order was entered on a stated date transferring this case to the city court of Bessemer, and ordering all papers in the case, transferred to the Bessemer city court, together with a transcript of the minutes of the Jefferson criminal court, showing the organization of that court, and its grand jury that returned the indictment, it sufficiently appears from the record that the case had been transferred from the Jefferson criminal court to the Bessemer city court on a specified date, giving said city court of Bessemer jurisdiction to hear and determine the cause under section 16, Acts 1900-01, p. 1854.

2. *Appeal and Error; Review; Record; Organization of Court.*—Although the name of the trial court was not stated at the head of the minute entry showing the arraignment of the accused and fixing the date of his trial, yet, a certiorari to the transcript which showed that the person who was judge of the Bessemer city court presided at the trial, and the certificate of the clerk to the transcript showed that an order then made was made by the city court of Bessemer, the organization of the trial court was sufficiently shown.

3. *Jury and Jurors; Empanelling; Excusing for Cause.*—For good cause shown the court may, in its discretion excuse certain persons summoned as jurors in empanelling regular jurors at the organization of the court.

4. *Same; Qualification; Residence.*—Section 33, Acts 1900-01, p. 1870, requires that petit jurors in criminal cases shall be drawn and summoned from the district over which the court has jurisdiction, and it is error, to place on a jury a person living outside the district; so in completing a jury for the trial of a capital case, it is error to place on the jury a person living more than two miles from Bessemer, although he lives within two miles of the county court house at Birmingham.

5. *Same; Empanelling.*—It is not error to exclude testimony as to the manner in which a petit jury is drawn, since section 7526, Code 1907, makes the requirements regarding the selection of jurors directory merely, so that no objection can be taken to a venire for a petit jury except for fraud in drawing or summoning.

6. *Witnesses; Contradiction; Corroboration.*—Where a witness has been permitted without objection to testify as to wounds he has received during the difficulty, and the defendant had sought to discredit his testimony by showing, from the position of the wound,

[Andrews v. The State.]

that witness was facing defendant with his pistol in his hand, pointed at the defendant, it was proper to permit the witness to show his wounds to the jury.

7. *Same; Cross Examination; Character.*—While the character of a witness or defendant cannot be proven by particular acts, and good character cannot be rebutted by proof of particular acts, yet, a witness may be asked on cross examination as to whether or not he has heard of certain particular acts to test the credibility of his accuracy; and hence, witnesses who have testified to defendant's good character may be asked on the cross as to how many fights they have heard of accused having, and as to whether or not he is regarded by the citizens of the community as a dangerous citizen.

8. *Same; Examination; Leading Question.*—A question "Tell the jury if you saw the pistol balls near the watering tub" is objectionable as being leading, and as assuming as a fact that the pistol balls were near the tub.

9. *Homicide; Evidence; Clothing.*—The clothing worn by deceased at the time of the killing, are proper subjects of evidence and may be introduced.

10. *Same; Identification of Weapon.*—It was competent to show the character and condition of pistols introduced on the preliminary examination for the purpose of aiding the jury in determining whether they were the same pistol, and in the same condition as when introduced on the preliminary trial.

11. *Same.*—The statement not being in the nature of a confession it was competent to show that shortly after the shooting the defendant stated that he did not know who did the shooting.

12. *Same; Instructions; Ignoring Defense.*—Where there was evidence tending to show self defense, a charge asserting that if the jury believed that the defendant killed the deceased, then defendant was guilty and the next thing to do was to fix the degree of punishment, ignored the evidence of self defense, and was improperly refused.

13. *Same; Elements; Malice.*—If there is a reasonable doubt as to whether the killing was done maliciously, a defendant cannot be convicted of murder.

14. *Same; Instructions; Elements of Offense.*—A charge asserting that the state must show beyond a reasonable doubt, all the constituents of the crime charged before accused is called upon to explain any circumstances connected therewith or to make any defense thereto, leaves to the determination of the jury a question of law as to what elements constitute the offense, and the evidence might show the commission of a lesser degree of crime covered by the indictment, although the evidence might not show the constituents of the crime charged.

15. *Same; Self Defense.*—A charge asserting that if the defendant was attacked by the deceased with a deadly weapon in his own livery stable, defendant was under no duty to retreat from his antagonist, is properly refused as misleading.

16. *Same; Duty to Retreat.*—A charge asserting that where one without fault is attacked by another, and he kills his assailant, if the circumstances furnish reasonable grounds for apprehending a design to take his life or do him some great bodily harm, and for

believing the danger imminent, and that such design will be accomplished, the homicide is justifiable, although it may turn out that the appearance was false and that there was in fact no such design nor any danger of its being accomplished, fails to hypothesize the defendant's belief that he was in imminent peril, and does not mention the matter of domicile or retreat.

17. *Same.*—Charges asserting that one feloniously attacked in his own place of business, is not bound to retreat even though by so doing he might secure his safety, but may stand his ground and take his assailant's life if it becomes necessary, and the homicide is justified; that homicide is justifiable when committed by one into whose place of business the deceased was endeavoring in a violent manner to force himself with the intention of unlawfully assaulting the owner thereof, are each properly refused as argumentative and misleading.

18. *Same; Self Defense; Apprehension of Danger.*—If one is attacked by another in his own house or place of business in such a manner as would raise in the mind of a reasonable man the belief that he is in imminent danger of great bodily harm, and such an one is so impressed then he is under no obligation to retreat, and will be justified in taking his assailant's life, provided he was without fault in bringing on the difficulty.

19. *Same; Defense of Person; Burden of Proof.*—In a prosecution for homicide the burden is on the state to show that the defendant was in fault in bringing on the difficulty and is not on the defendant to show that he was free from fault.

20. *Charge of Court; Reasonable Doubt.*—A charge asserting that the law demands that the minds of the jurors be so satisfied by the evidence that no reasonable doubt exists in them, but that their finding is correct, and accused guilty of the charge, and that if they are not satisfied in such a way, they should not convict, is involved and uncertain and properly refused.

2. *Same; Duty of Judge.*—It is the duty of the judge in charging the jury to give the law applicable to all theories presented by the testimony, and if he recapitulates the evidence on the one side to recapitulate it also on the other, and not to indicate by the manner or matter of the charge what are his own views as to the effect of the testimony.

22. *Same; Invading Jury's Province.*—A statement by the court that the evidence on the part of the state goes to show that the defendant fired all three of those shots, goes beyond a statement of the tendencies of the evidence and becomes invasive of the province of the jury; and when the state's evidence tended to show that the decedent's pistol was fired once, the charge was not supported by the evidence.

23. *Appeal and Error; Harmless Error; Admission of Evidence.*— Where a witness answered a question objected to by stating that it might or might not, the overruling of the objection is harmless.

24. *Same; Recalling Witness.*—Where a witness is recalled by the state and the court refuses to permit him to restate what he has just stated on cross examination, no injury is done the defendant.

25. *Evidence; Demonstrative Evidence.*—A witness having testified that he was at the place of the killing and that another witness who

had testified that he was there, in fact was not there, it was compe-tent for the witness to state whether he could have seen such othei witness, had he been present.

26. *Same; Character of Accused; General Character.*—A witness having testified that he had known the defendant sixteen or seven-teen years, and knew his general character, and that it was good, answered in response to a question as to what he based his estimate on, that he had known accused and that accused had worked for him a good while, and had access to all his valuables, that he never miss-ed anything, and that accused had always been obliging and polite, but that he did not base his estimate upon that alone as he had never had any occasion to think the defendant's characted bad. Held, the further facts testified to by the witness was not sufficient to take from the jury the testimony that he knew defendant's char-acter and that it was good, hence, it was error to exclude such tes-timony.

27. *Same.*—Testimony of good character generally, not given from the witness' knowledge of the defendant's general character, but based on the general observation of the defendant by the witness is properly excluded.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

John Andrews was convicted of murder, and he ap-peals. Reversed and remanded.

The record shows the organization of the criminal court of Jefferson county, the drawing of the grand jury for that term, and the organization of the city court of Bessemer. It is further shown by the certiorari that the city court of Birmingham was organized and the grand jury ordered to turn in report of May 14, 1906. It fur-ther shows that on the 17th day of September, 1907, an order was entered in the criminal court of Birmingham, transferring said cause from the criminal court of Jef-ferson county to the city court of Bessemer, and an or-der to transmit all papers in the cause to the city court of Bessemer, together with a transcript of the minutes showing the organization of the criminal court of Jeffer-son county and of the grand jury. Another order is shown, made on December 9, 1907, in the city of Besse-mer, for drawing jurors to try capital cases in the city court of Bessemer, beginning on the 6th day of Janua-

ry, 1908. The indictment appears to have been preferred
and filed on the 21st day of April, 1906, and a bond made
by the defendant for his appearance at the next term of
the criminal court of Jefferson county, and from term
to term, etc., approved November 24, 1906. The certifi-
cate of the clerk of the criminal court of Jefferson coun-
ty transferring the cause, and the minutes, are dated
May 5, 1908.

It was shown that the juror Lynn did not live within
the district over which the city court of Bessemer had
jurisdiction. In impaneling the regular jurors for the
week in which the trial of this cause was set, for good
cause shown, the court excused Brown and Betts, who
had been summoned as jurors. The defendant entered a
motion to quash a venire, and in that connection offer-
ed to show by Capt. Crook that the jurors were drawn
from the box before any were selected for grand or petit
jurors, and that the grand jurors were then selected
and placed upon the grand jury venire, and the names
remaining were placed upon and made to constitute the
venire for the petit jury.

The record shows that Lawrence Lipscomb was next
called by the defendant, and stated that he was engaged
as clerk at the ice factory, and had been living in Besse-
mer 18 or 20 years, and knew the defendant's general
character to be good. On cross-examination he stated
that he based this opinion on his general observation of
defendant, and on motion of the state this evidence was
excluded. The same witness was asked as to the charac-
ter and condition of the pistols which were introduced
in evidence on the preliminary trial as the pistols used
by the different parties to the shooting; but on objec-
tion by the state the questions and answers were exclud-
ed. On the cross-examination of the defendant, he was
asked by the state concerning various difficulties he

[Andrews v. The State.]

had been in, and in that connection was asked the question which is set out in the opinion, to which objection was made and overruled.

The following charges were refused to the defendant:

"(1) If there is a reasonable doubt as to whether the killing was done with malice, the defendant cannot be convicted of murder at all.

"(2) The court charges that the state must show by the evidence beyond a reasonable doubt all the constituents of the crime charged before the defendant is called upon to explain any circumstances connected therewith, or to make any defense.

"(3) If the defendant was attacked in his livery stable by the deceased with a deadly weapon, the defendant was under no duty to retreat from his antagonist.

"(4) The court instructs the jury that one feloniously assaulted in his own place of business is not bound to retreat, even though by so doing he might secure his safety; but he may stand his ground, and take his assailant's life it it becomes necessary, and the homicide is justified.

"(5) The court instructs the jury that homicide is justifiable when committed by one into whose place of business deceased was endeavoring in a violent manner to force himself, with the intention of unlawfully assaulting the owner thereof.

"(6) The evidence which shows the killing of one person by another with a deadly weapon may rebut the presumption of malice arising from the use of such weapon.

"(7) The court instructs the jury that where one without fault is attacked by another, and he kills his assailant, if the circumstances furnish reasonable ground for apprehending a design to take his life or do him some great bodily harm, and for believing the danger imminent, and that such design will be accomplished, the

[Andrews v. The State.]

homicide is justifiable, though it may turn out that the appearance was false, and that there was in fact no such design, nor any danger of its being accomplished.

"(8) The law demands that your minds be so satisfied by evidence that no reasonable doubt exists in you but that your finding is correct, and the defendant guilty of that charge; and if you are not satisfied in this way you should not convict."

The other charges requested were on self-defense, and need not be specially set out.

ALLEN & BELL, and T. T. HUEY, for appellant. The entry intended to be an arraignment of the defendant as well as an order fixing day for the the trial purports to have been made by the city court of Bessemer, and as no other order was made by the city court of Bessemer in the cause, it does not affirmatively appear that this court has jurisdiction to make it, and it not so appearing, the order was of no effect.—*Spier v. The State,* 69 Ala. 159; *Lominack v. The State,* 39 South. 676. Under the Special Acts of Jefferson county, it must affirmatively appear as to how the jury was drawn for the trial of a capital case. —*Scott v. The State,* 141 Ala. 39; *Kennebrew v. The State,* 132 Ala.; *Barton v. The State,* 115 Ala. 1; *Bankhead v. The State,* 14 Ala. 14. The 7th and 8th grounds of the motion are sufficient and should have been sustained.—*State v. Bell,* 115 Ala. 25. The evidence certainly justifies the inference that Millstead Justices & Johnson, were acting in unison, aiding and abetting each other.—*Smith v. The State,* 136 Ala. 1; *Thomas v. The State,* 30 South. 391. Under the facts in this case the defendant had a right to defend himself.— *Naugher v. The State,* 105 Ala. 26; *Crawford v. The State,* 112 Ala. 1; *Pugh v. The State,* 132 Ala. 1. The judge went beyond his province in his charge to the jury

as to the tendencies of the evidence.—*Line v. The State,* 124 Ala. 1; *Greenwood v. The State,* 99 Ala. 501; *Poe v. The State,* 87 Ala. 65. Counsel discuss assignments of error as to evidence, but without citation of authority.

ALEXANDER M. GARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State. The records affirmatively showed the organization of the city court of Birmingham, the finding and return of the indictment, the order of removal made at the instance of defendant, and proper orders after its removal.—Acts 1890-1, p. 561. The court did not err as to the evidence on motion to quash indictment.— *Thompson v. The State,* 122 Ala. 12; Sec. 7572, Code 1907. The court did not err in reference to the excusing of jurors.—Sec. 5016, Code 1896; *Amos v. The State,* 96 Ala. 120. The witness was properly permitted to exhibit the wounds on his body.—*King v. The State.* 100 Ala. 85. The court did not err in reference to the admission or rejection of other testimony.—*Roberts v. The State,* 68 Ala. 516; *Holly v. The State,* 75 Ala. 14; *Waters v. The State,* 117 Ala. 108. The court did not err in reference to the the testimony as to character.— *Jackson v. The State,* 78 Ala. 471; *Griffin v. The State,* 90 Ala. 583; *Holmes v. The State,* 88 Ala. 26. The court properly refused the defendant's requested charge.— *Martin v. The State,* 119 Ala. 1; *Bouldin v. The State,* 102 Ala. 78; *Whatley v. The State,* 144 Ala. 68; *Matthews v. The State,* 136 Ala. 47; *Lewis v. The State,* 88 Ala. 11; *Mitchell v. The State,* 133 Ala. 65; *Harrison v. The State,* 20. The constituents of self defense should be set out.—*Mann v. The State,* 134 Ala. 1.

SIMPSON, J.—The appellant was convicted of the crime of murder, and his punishment fixed at death.

[Andrews v. The State.]

The city court of Bessemer was created by the act approved February 28, 1901 (Acts 1900-01, p. 1858; Loc. Laws Jefferson Co. [by Weakley] p. 115). Section 16 of that act provides that cases then or thereafter pending in the criminal court of Jefferson county "may be, by consent of the parties thereto, transferred to said city court of Besssemer;" and section 25 provides that in all cases where a party is arrested on an indictment, "for an offense arising or committed by him in said district, * * * if said warrant or capias or other process is returnable to the criminal court of Jefferson county, and the defendant makes bond for his appearance, his case shall be removed to said city court of Bessemer, and the papers shall thereupon become returnable to said city court of Besssemer, and the case triable there." Section 26 provides that, in all cases where the defendant fails or refuses to make bond at the time of his arrest for an offense committed in said district, he shall be confined in the county jail at Birmingham, and his case stand for trial in the criminal court of Jefferson county, provided that "if any person who is confined in said jail for an offense committed in said district, within the jurisdiction of said city court, shall make a good and sufficient bond for his appearance at the said city court, to answer the charge preferred against him, it shall be the duty of the sheriff to immediately return said bond to the clerk of the criminal court of Jefferson county, and the case shall thereupon stand removed to the city court," and it shall be the duty of the clerk to transmit papers, etc.

It is first insisted by appellant that the record shows that the indictment in this case was found in said criminal court of Jefferson county, in April, 1906, and, as shown by the transcript, was not certified to the city court of Bessemer until the 14th day of February, 1908,

after this case had been tried, and the defendant convict-
ed, on the 6th day of January, 1908, and that consequent-
ly, at the time of trial, the city court of Bessemer was
without jurisdiction to try this case. The transcript
from the criminal court of Jefferson county, in the rec-
ord, shows that, on the motion of the defendant, his case
was transferred to the city court of Bessemer on Septem-
ber 17, 1907. We think it sufficiently appears that this
case was transferred to said city court before the trial
of the same, and the indictment was in court.—*Dudley
v. Birmingham, etc., Co.,* 139 Ala. 453, 461, 36 South.
700. The court had jurisdiction. In the case of *Rose
v. State,* 117 Ala. 77, 79, 23 South. 638, 639, the record
failed to show "anything touching the transfer of this
cause."

The organization of the trial court sufficiently ap-
pears from the transcript brought up by certiorari.
While it is true that the name of the court is not stated
at the head of the minute entry as to the arraignment of
the defendant and the fixing of the day for his trial, yet
it shows that Hon. Wm. Jackson was presiding, and in
connection with the certificate of the clerk at the end of
the transcript it sufficiently shows that the order then
made was by the city court of Bessemer.

The return to the certiorari shows also that the special
jurors were drawn according to law.—Loc. Acts Jeffer-
son Co. (Ast Feb. 11, 1901) 705. It appears from the
record that the excusing of the jurors Brown and Betts
by the court was upon the impaneling of the juries at the
organization of the court, which was within the discre-
tion of the court, and not error.

Section 33 of the act creating said city court of Bes-
semer provides that the petit jurors "shall be drawn and
summoned from said district." Consequently it was er-
ror to place the juror Lynn on said jury, who was shown
to live outside said district.

The act provides (section 33) that, "in completing the juries for the trial of any capital case, the judge of said city court shall draw, under the provisions of this act, the names of persons subject to jury duty, residing within two miles of the place where said court is held in the city of Bessemer." Consequently there was no error in placing upon the jury Lon Tyler, who lived more than two miles from the courthouse at Birmingham, but within two miles of Bessemer; but there was error in placing upon the panel Bob Vance, who resided within two miles of the courthouse at Birmingham, but not within two miles of Bessemer.

But there was no error in sustaining the objections to the questions propounded by defendant to the witness Capt. Crook as to the manner of drawing the juries, as the provisions of law in regard to the selection of jurors are merely directory, and no objection can be made, except for fraud.—Code 1896, § 4997; Code 1907, § 7256; *Baker v. State*, 122 Ala. 12, 26 South. 141; *Childress v. State*, 122 Ala. 21, 26 South. 162.

The witness Millstead, in relating the res gestæ, had been allowed without objection to testify as to the wound he received in his thumb and side during the difficulty, and it was sought by the defendant to discredit his testimony, by showing, from the position of the wound, that he was facing the defendant, with his pistol in his hand, pointed at defendant. It was not error to allow him to show the wounds received by him. It is true the defendant was not on trial for shooting him; but the course of the examination, just preceding, by the state and defendant, made this testimony pertinent.

There was no error in allowing the clothing which was worn by the deceased to be introduced in evidence.— *Holley v. State*, 75 Ala. 14.

There was no error in overruling the motion by the defendant to exclude the testimony of the witness Stallings. No objection was made to the questions, and no reason is assigned for excludinig the testimony.

On cross-examination the state asked the witness Dr. Carter, who had testified to the good character of the defendant, "How many fights do you recall that he has had?" and he answered that he had heard of but two. The defendant objected to the question, and moved to exclude the answer, both of which were overruled. While the character of a witness or of the defendant cannot be proved by particular acts, nor can the evidence of his good character be rebutted by proof of particular acts, yet, for the purpose of testing the credibility or accuracy of the character witness, he may be asked, on cross-examination, whether or not he has heard of particular acts.—*De Arman v. State,* 71 Ala. 351, 361; *Jones v. State,* 76 Ala. 9, 15, 16; *Jackson v. State,* 78 Ala. 471, 472; *Moulton v. State,* 88 Ala. 116, 119-20, 6 South. 740, 16 Am. St. Rep. 52; *King v. State,* 89 Ala. 146, 7 South. 750; *Lowery v. State,* 89 Ala. 45, 49, 13 South. 498; *Thompson v. State,* 100 Ala. 70, 71, 14 South. 878; *Goodwin v. State,* 102 Ala. 88, 98, 45 South. 571; *Smith v. State,* 103 Ala. 57, 70, 15 South. 866; *Terry v. State,* 118 Ala. 80, 86, 23 South. 776; *Carson v. State,* 128 Ala. 58, 60, 29 South. 608; *Williams v. State,* 144 Ala. 14, 18, 40 South. 405. There was no error in overruling the objections to this question, and the three following ones, of the same tenor. The following question, also, as to whether the defendant had not been regarded by the citizens of the community as a desperate character, was proper, on cross-examination.

As the answer to the question to the witness Dr. Winters, whether a ball entering clothing would make a hole about the size of a bullet, was, "It might, and it might

not," the overruling of the objection to that question was immaterial. The question as to whether the hole showed he was shot from behind was not answered, except by showing that the witness could not tell anything about it. Hence there was no error, injurious to defendant, in overruling the objection to the same.

The recalling of Dr. Winters by the state did not result in any injury to the defendant; hence he cannot complain. Nor was there any injury to him in the refusal to permit the witness to state over, on redirect examination, what he had just stated on cross-examination. The witness Hannon stated that he was in a stall in the stable, and that Babe Justice was not there. He was asked by the defendant, "you could have seen him?" The state objected, and the court sustained the objection. This was error. The evidence shows that "Babe Justice" was another name for Tom Justice, who had testified, and it was proper to ask the witness whether he could have seen him, if he had been there.—*Tesney v. State*, 77 Ala. 33.

The witness Moody, on behalf of the defendant, stated that he had lived in Bessemer 18 or 19 years, had known the defendant 16 or 17 years, knew his general character, and that it was good. He also made other statements about the defendant's honesty, politeness, etc., about having business dealings with him, and testified that witness was a real estate man and talked with a great many people, etc. On being asked on what he based his opinion of his character, he stated that "the defendant had worked for him a good while, had had access to all his valuables," but that "he had never missed anything, and defendant was always exceedingly polite and obliging." The state asked him, "Is that what you base your opinion on?" and he replied, "Not altogether; I never had any occasion to think his character was bad."

The state moved to exclude the testimony; and the court said, "Gentlemen, you are not to consider the testimony of this witness." This was error. The statement of the further facts was not sufficient to take from the jury the testimony of the witness that he knew the general character of the defendant, and it was good. The statement of the court excluded all of the testimony of the witness from the jury.

There was no error in excluding that part of Lipscomb's testimony preceding the exception, as he did not testify to a knowledge of the defendant's general character, but stated that he based his opinion on his general observation of him.

The question to the witness Huey, "Tell the jury if you saw the pistol balls near the watering tub," was objectionable, as being a leading question, and also as assuming the fact that the pistol balls were there. Consequently there was no error in sustaining the objection to it.

Upon anther trial the defendant should be permitted to prove the character and condition of the pistols which were introduced on the preliminary trial, in order that the jury may determine whether they were the same pistols and in the same condition as when introduced in this trial.

There was no error in asking the witness Huey, on cross-examination, whether he had known of the defendant's having been in other troubles. See authorities supra.

The court erred in overruling the objection to the question by the state, "And you jumped on an old man by the name of Price down there?" See cases supra.

There was no error in overruling the objections to the question to the witness Patton as to statements made by the defendant, shortly after the shooting, that he did not

know who did the shooting. This was not in the nature of a confession; and, if the intention was to contradict the witness, no predicate was laid.

In charging the jury, it is the duty of the judge to give the law applicable to all theories presented by the testimony and, if he recapitulates the evidence on one side, to recapitulate it also on the other side, and not to indicate, by the matter or manner of the charge, what his own views are as to the effect of the testimony.—1 Blashfield on Instructions to Juries, p. 139, § 56; 12 Cyc. 612, 613; *Banks v. State,* 89 Ga. 75, 14 S. E. 927; *State v. Gilmer,* 97 N. C. 429, 1 S. E. 491; *Aaron Co. v. Hirschfield,* 89 Ill. App. 205; *Wright, et al. v. Central R. R. & B. Co.,* 16 Ga. 38; *State v. Moses,* 13 N. C. 452;; *Smith v. State,* 68 Ala. 425, 432. We cannot say whether the oral charge in this case was liable to the objection that it summed up the evidence on one side, and not on the other, as the entire oral charge is not set out in the bill of exceptions; but we are disposed to think that the manner of stating the evidence indicated pretty clearly to the jury the judge's own impressions of the weight and effect of the testimony, and that it was an invasion of the province of the jury. However, the statement that "the evidence on the part of the state goes to show that this defendant fired all three of those shots" goes beyond the rule laid down by our courts, to the effect that the judge may state the tendency of the evidence on both sides (*White v. State,* 111 Ala. 92, 97, 21 South. 330); and it is also erroneous because some of the evidence produced by the state tends to show that the pistol of the deceased was fired once. It was erroneous, also, to charge (in the oral charge) about the shooting of Milstead, as the defendant was not on trial for shooting him. This court has also condemned "an argument by the court against the defendant on the evidence."—*McIntosh v. State,* 140

Ala. 137, 141, 37 South. 223. Without passing upon that phase of the oral charge, we merely cite these authorities for the future guidance of the court.

The court erred in charging, "If you find this defendant killed Taylor Johnson, then this defendant is guilty. The next thing for you to do is to fix the degree of punishment." This ignored entirely the defense of self-defense, which the evidence for the defendant tended to sustain.

The court erred in refusing to give charge 1, requested by the defendant.

There was no error in refusing to give charge 2, requested by the defendant. "What are elements of the offense is a question of law for the court."—*Whatley v. State,* 144 Ala. 69, 39 South. 1014, 11th. h. n. Moreover, although the evidence might not show "the constituents of the crime charged," yet it might show the commission of a lesser degree of crime, covered by the indictment.

Charge 3, refused to the defendant, was properly refused, as it was misleading. The same is true of charges 4, 5, and 6; and these are argumentative as well.

There was no error in the refusal to give charge 7. It failed to hypothesize the belief of the defendant that he was in imminent peril, and also failed to mention either the matter of retreat or domicile.

Charge 8 is involved and uncertain in its meaning, and was properly refused.

Without noticing specifically each of the other charges which were requested by the defendant and refused by the court, it is sufficient to say that if one who is free from fault in bringing on the difficulty is attacked by another, in his own house or place of business, in such a manner as would raise in a reasonable mind the belief that he is in imminent danger of great bodily harm, and he is so impressed, he is not under any obligation to re-

treat, but may take the life of his assailant, and be justi-fied under the law. While he must be without fault, yet the burden is not on him to show freedom from fault, but on the state to show that he was not free from fault.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DENSON and MAYFIELD, JJ., concur.